612 A.2d 1385

**READY FOOD PRODUCTS, INC.**

v.

**GREAT NORTHERN INSURANCE COMPANY and Chubb Group Insurance Companies, Appellants.**

Superior Court of Pennsylvania.

Argued July 30, 1992.

Filed Sept. 18, 1992.

Peter T. Parashes, Philadelphia, for appellants.

Mayer Horwitz, Philadelphia, for appellee.

Before MONTEMURO, FORD ELLIOTT and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order entering judgment in favor of appellee, Ready Foods, Inc., and against appellants, Great Northern Insurance Company and Chubb Group of Insurance Companies, on the sole issue of liability notwithstanding an earlier verdict in favor of appellants.

Appellee is a manufacturer of certain dairy products, and had purchased from appellants a policy of insurance covering its pasteurizing equipment. The pasteurization process

required that the product be conducted through a press, called a plate and frame heat exchanger, containing several temperature zones, which first raise the temperature of the dairy product to sterilize it, and then lower the temperature to cool the product prior to packaging. As it passes through the press, the dairy product is heated or cooled by means of approximately 250 metal plates which line the frame, and conduct the heat or cold provided by hot or cold water on the opposite side of the plate. In 1986, after complaints were received from customers, investigation revealed that the plates used during the final cooling process developed leaks due to pitting corrosion of their stainless steel surfaces, allowing psychrophilic bacteria to enter the dairy product, and contaminate it. Appellee unsuccessfully sought payment for its losses under the insurance policy, and after an initial verdict in favor of appellants, on postverdict review the trial court reversed itself, and entered judgment in favor of appellee. This appeal followed.[1]

Appellant has presented us with three issues on appeal, each assigning error to the trial court's interpretation of a specific term in the policy, entitled "Boiler and Machinery Insurance," which in pertinent part reads as follows:

## INSURING AGREEMENT

In consideration of payment of the policy premium this policy covers risk of loss or damage to the insured's property solely caused by or resulting from ... mechanical breakdown ... except as hereinafter excluded ...

Section II. EXCLUSIONS TO THE INSURING AGREEMENT

A. This policy does not insure against loss or damage caused or resulting from the following:

\* \* \* \* \* \*

9. Water damage;

\* \* \* \* \* \*

---

**1.** Because the parties stipulated to damages, the trial court's finding is limited to the liability question.

With respect to the following exclusions to the extent that a covered peril ensues, the Company shall be liable but only for such resulting covered loss or damage:

\* \* \* \* \* \*

17. Wear and tear, depletion, gradual deterioration, corrosion or erosion of material . . .

Appellant argues that the trial court erred in finding that the term "water damage" is ambiguous, and does not exclude appellee's damages from coverage; in finding that the term "corrosion" does not exclude appellee's losses from coverage; and in finding that the term "mechanical breakdown" does encompass the problem encountered with appellee's machine. Before addressing these claims, which are in fact one argument that the trial court disregarded the plain meaning of the policy language, we note that

The threshold determination of whether a writing is "ambiguous" necessarily lies with the court. *See, Hutchison v. Sunbeam Coal Corp.*, [513 Pa. 192, 519 A.2d 385 (1986); *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878 (1986). In making that determination, the court must assess the writing as a whole and not in discrete units. *See, Musisko v. Equitable Life Ins. Co.*, 344 Pa.Super. 101, 496 A.2d 28 (1985); *Huffman v. Aetna Life and Cas. Co.*, 337 Pa.Super. 274, 486 A.2d 1330 (1984). A contract is "ambiguous" if "reasonably intelligent persons . . . would differ regarding its meaning." *Musisko v. Equitable Life Ins. Co., supra* 344 Pa.Super. at 106, 496 A.2d at 31. *See also, Hutchison v. Sunbeam Coal Corp., supra; Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 476 A.2d 1 (1984). Thus, we will not allow an overly-subtle or technical interpretation to defeat the reasonable expectations of the insured. *See, Huffman v. Aetna Life and Cas. Co., supra.* On the other hand, we will not convolute the plain meaning of a writing merely to find an ambiguity. *See, Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984).

*DiFabio v. Centaur Insurance Company*, 366 Pa.Super. 590, 594, 531 A.2d 1141, 1143 (1987).

In reversing its original decision in favor of appellants, the trial court found that the term "mechanical breakdown"

would include any situation where a machine fails to function correctly, not merely one in which it has ceased functioning completely.... A reasonable party might, thus believe, that the heat exchanger unit suffered a "mechanical breakdown" when, by reason of the holes resulting from corrosion, it admitted contaminated water into the dairy product.

(Trial Court Opinion at 3).

With regard to the meaning of "water damage," as the trial court points out, the policy nowhere defines this term. Like "corrosion," it is a compensable event only to the extent that a covered peril ensues from its occurrence. Accordingly, the court found that since the policy language did not unequivocally and unambiguously exclude the damage at issue from coverage, the language must be resolved against the insurer in favor of the insured. *DiFabio, supra.*

■ Appellants argue that the water damage exclusion is applicable as the actual loss of the product occurred through its contamination by waterborne bacteria. And, since the term water damage is undefined, it is also unrestricted by any limitation except damage by flood. The problem with this argument is that it is being used by appellants to advance the notion that appellee's losses are the monetary ones incurred in relation to credits given to customers for the returned (adulterated) dairy products. The policy, however, insures the machinery involved here. As appellee points out, no argument has been made that the corrosion, assuming it to have been the only damage, was caused by the action of water. Therefore appellant's contention in this regard would fail even were the term water damage clear in its implications.

■ Further, appellants argue that the damage to the equipment is corrosion, another excluded peril, and that its meaning too is explicit. They contend that no mechanical

breakdown occurred because any failure of the pasteurizing equipment to function properly was caused by corrosion. The corrosion is thus seen as both cause and effect, in order to avoid the consequences of the policy provision permitting reimbursement where corrosion is the cause of mechanical breakdown, and, as well, to posit the theory that mechanical breakdown must be seen as a distinct secondary event divorced from any generating factors, like corrosion.

Appellants have provided their own definition of mechanical breakdown as a condition which cannot exist absent a fortuitous failure of moving parts. (Appellant's Brief at 25) The plates are stationary. Moreover, this definition allows the claim that because the contaminating seepage could have been avoided by proper maintenance or replacement of heat exchange plates, any damage suffered by appellee was predictable. Thus, according to this reasoning, appellee's losses are noncompensable.

However, appellee's actions with regard to the machinery are not the focus here. Even if they were, appellants failed to produce evidence to support the argument that appellee's maintenance protocols were responsible for the damage.[2]

We agree with the trial court, and conclude that the intent of the parties is not clarified by the language of the policy. Further, we need not define the terms involved here to find that appellant's verbal gymnastics make clear the susceptibility of the exclusionary clauses to more than one interpretation. Applicability of the pertinent terminology is in fact unclear as definitions are nowhere contractually provided for the terms in question. Under such circumstances, we see no reason to disturb the decision of the trial court.

Judgment affirmed.

2. The parties have stipulated that owner's manuals from the equipment manufacturer were not received until two years after the ocurrence which underlies the action.