629 A.2d 957

O'BRIEN ENERGY SYSTEMS, INC., Appellant,

v.

AMERICAN EMPLOYERS' INSURANCE COMPANY, Federal Insurance Company, International Insurance Company, Liberty Mutual Insurance Company, National Union Fire Ins. Co. of Pittsburgh, Pa, Planet Insurance Company and Montgomery County, Pennsylvania, and Smithkline Beecham Corporation.

Superior Court of Pennsylvania.

Argued Feb. 11, 1993.

Filed Aug. 3, 1993.

458

Lee M. Epstein, Philadelphia, for appellant.

Walter A. Stewart, Philadelphia, for Liberty Mut., appellee.

James A.A. Pabarue, Jr., Philadelphia, for American Employers', appellee.

Richard W. Bryan, Arthur Burger, pro hac vice National Union Fire Ins. Co. of Pittsburgh, appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

WIEAND, Judge:

In this action for declaratory judgment to determine whether there was insurance coverage requiring one or more insurers to defend O'Brien Energy Systems, Inc. (O'Brien Energy) against a claim for property damage caused by the gradual migration of methane gas, the trial court entered summary judgment in favor of the insurers. O'Brien Energy appealed. For the reasons herein set forth, we affirm.

In 1979, SmithKline Beecham Corporation (SmithKline) purchased from National Gypsum Company certain quarry real estate in Montgomery County for the purpose of constructing and maintaining a research facility. Included in the sale was an assignment of a lease agreement which National Gypsum had with Montgomery County, pursuant to which the County conducted a landfill operation. According to the terms of the lease agreement, the County was required to (a) construct all necessary sanitary monitoring facilities and meet all requirements for the approved management of a sanitary landfill, and (b) indemnify the owner and hold it harmless from all claims for injury to persons or damage to property arising from the County's use of the leased premises, including damages caused by methane gas.

O'Brien Energy develops, owns and operates alternative fuel and waste heat recovery projects. A significant part of its business involves the operation of gas to energy facilities. This entails the extraction of methane gas, which forms naturally in landfills, and the conversion thereof to power, which is then sold to nearby industries or public utilities. On October 13, 1983, O'Brien Energy entered into a Methane Gas Agree-

ment with SmithKline and the County. Pursuant to this agreement, O'Brien Energy was granted a license to extract methane gas from the County's landfills. The electricity and steam generated thereby were sold to SmithKline for use in its research facility. The agreement among the parties provided in pertinent part as follows:

> Neither the purchase by [SmithKline] of electricity and steam from O'Brien nor the grant of a license to O'Brien to develop gas from the landfill property shall constitute a release of the County from its obligations to operate the landfill property so as to abate any nuisance from methane gas generated by decomposition of waste deposited on the landfill property. . . .

SmithKline detected methane gas migration from the landfill in June, 1986 and commissioned consultants to make a landfill impact survey. In August, 1987, the consultants confirmed the migration of methane gas. In December, 1987, gas which had migrated onto SmithKline's land caused an explosion within a utility conduit. On June 26, 1989, SmithKline commenced an action against the County to recover damages for and to prevent future damage from migrating methane gas. It alleged that the County had breached the terms of its lease and the Methane Gas Agreement by failing to control the migration of landfill gases. The County joined O'Brien Energy as an additional defendant. The defendant's complaint contained five counts. It alleged causes of action for negligence and breach of contract and requested a mandatory injunction requiring O'Brien Energy to operate its gas recovery system at full capacity so as to prevent additional gas migration. The County also requested a declaratory judgment that the Methane Gas Agreement required O'Brien Energy to remedy the migration of methane gas; and, finally, the County requested indemnification for any liability which it might incur to SmithKline.

The present action for declaratory judgment was filed by O'Brien Energy against American Employers' Insurance Company, Liberty Mutual Insurance Company, and National Union Fire Insurance Company of Pittsburgh to determine

whether policies of comprehensive general liability insurance which they had issued required that they provide a defense for O'Brien Energy in the underlying action to which it had been named as an additional defendant. Thereafter, the parties filed motions for summary judgment. The trial court held that coverage for migrating gases was excluded by the terms of the several policies and entered judgment in favor of the insurers.

 A motion for summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, a court must examine the record in a light most favorable to the nonmoving party and must resolve all doubt against the moving party. *Mariscotti v. Tinari,* 335 Pa.Super. 599, 601, 485 A.2d 56, 57 (1984); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930–931 (1984).

 The interpretation of an insurance contract is a matter of law for the court. The primary objective of contract interpretation is to ascertain and effectuate the intent of the parties as it is reasonably manifested by the language of their written contract. *Toombs NJ Inc. v. Aetna Casualty & Surety Co.,* 404 Pa.Super. 471, 476–477, 591 A.2d 304, 307 (1991); *J.H. France Refractories Co. v. Allstate Insurance Co.,* 396 Pa.Super. 185, 193, 578 A.2d 468, 472 (1990) (en banc), *affirmed in part, reversed in part,* — Pa. —, 626 A.2d 502 (1993). The words of an insurance policy which are unambiguous should be construed according to their plain and ordinary meaning. *Harford Mutual Insurance Co. v. Moorhead,* 396 Pa.Super. 234, 240, 578 A.2d 492, 495 (1990), *allocatur denied,* 527 Pa. 617, 590 A.2d 757 (1991). The court must assess the writing as a whole, and not in discrete units, when determining whether a writing is ambiguously drafted. *Ready Food Products, Inc. v. Great Northern Insurance Co.,* 417 Pa.Super. 643, 646, 612 A.2d 1385, 1387 (1992). A contract term or provision may properly be deemed ambiguous if reasonable minds can differ as to its meaning. *Id.* While the court will

not allow an overly-subtle or technical interpretation to defeat the reasonable expectations of the insured, it will not convolute the plain meaning of a writing merely to find an ambiguity. *Id.*

■ The insurer's duty to defend the insured is dependent upon the coverage afforded by the insured's policy. *Harford Mutual Insurance Co. v. Moorhead, supra* at 238, 578 A.2d at 494.

> If the factual allegations of the complaint against the insured state a claim which would **potentially** fall within the coverage of the policy, then the insurer has the duty to defend. As the Supreme Court has stated, "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured.

*Biborosch v. Transamerica Insurance Co.*, 412 Pa.Super. 505, 509, 603 A.2d 1050, 1052, *allocatur denied,* 532 Pa. 653, 615 A.2d 1310 (1992) (citations omitted).

■ The several policies issued to appellant by the appellees are comprehensive general liability policies which provide coverage for bodily injury and property damage liability, as well as personal injury and advertising liability. Each policy contains a pollution exclusion clause. The policy issued by American Employers' states, in pertinent part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> bodily injury or property damage
>
> to which this insurance applies, caused by an occurrence, . . . .

An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from

the standpoint of the insured." An exclusion thereto provided that the insurance coverage had no application

> to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

An endorsement to the American Employers' policy extended indemnity to the insured for "personal injury" claims arising out of

> **A.** false arrest, detention or imprisonment, or malicious prosecution;
>
> **B.** the publication or utterance of a libel or slander or of other defamatory [or] disparaging material, or a publication [or] utterance in violation of an individual's right of privacy, except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **named insured**;
>
> **C.** wrongful entry or eviction, or other invasion of the right of private occupancy.

The policies issued by Liberty Mutual and National Union are similar, if not identical in all instances. Both contain pollution exclusion clauses as well as personal injury coverage. The policies issued to appellant by Liberty Mutual in 1984 and 1985 (policy numbers LG1–131–096550–034 and LG1–131–096550–035) contain the same pollution exclusion and personal injury coverage as set forth above. A review of the policies included in the record reveals that Liberty Mutual changed its policies slightly in 1986 and 1987. The policies issued to appellant during that period (policy numbers LG1–131–096550–036 and TB1–131–096550–037) contain a pollution exclusion which provides:

> [This policy does not apply:]

(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) At or from premises you own, rent or occupy;

(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible;

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[1]

In 1987, the Liberty Mutual policy also set forth the personal injury liability coverage within the general liability form instead of by endorsement. "Personal injury" was defined in 1987 as an "injury, other than 'bodily injury,' arising out of,"

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

The pollution exclusion clauses in the National Union policies are identical to those used by Liberty Mutual in 1986 and 1987. The National Union policies also contain an absolute

1. In 1986, Liberty Mutual changed its pollution exclusion to that as stated by endorsement. The new exclusion was not incorporated into the general liability form until 1987.

pollution exclusion endorsement which excludes coverage for any

> personal injury or property damage arising out of the discharge [or] release ... of toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

National Union defines "personal injury" in the same manner as Liberty Mutual's 1987 policy.

The exclusionary language in the policies would seem to be controlling. The language is clear. There is no coverage for liability for damages caused by the escape of pollutants or the migration of gases from appellant's operation unless, in the case of the American Employers' policy, there has been a "sudden and accidental" discharge thereof. Here, it is clear that the basis for the underlying litigation is not the "sudden and accidental" discharge of polluting gases but the gradual migration thereof from the County's landfill and/or appellant's gas recovery project. Because the language of the policies is clear and unequivocal, there is no reason why the same should be avoided or ignored by a court which has been asked to interpret the same.

In *Lower Paxton Township v. United States Fidelity and Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393, *appeal denied*, 523 Pa. 649, 567 A.2d 653 (1989), the Superior Court considered a pollution clause and found that it was not ambiguous. The Court observed:

> An ever-increasing number of courts have rejected the insured's ambiguity argument and have found that sudden and accidental has a clear plain meaning that excludes coverage not only for intentional pollution but also for any unintentional release or dispersal of pollution that occurs gradually over time. *See, e.g., United States Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988); *United States Fidelity & Guar. Co. v. The Murray Ohio Mfg. Co.*, 693 F.Supp. 617 (M.D.Tenn.1988); *American Motorists Ins. Co. v. General Host Corp.*, 667 F.Supp. 1423

(D.Kan.1987); *Claussen v. Aetna Casualty & Sur. Co.*, 676 F.Supp. 1571 (S.D.Ga.1987) (appeal pending, No. 87–8972 11th Cir.); *International Minerals & Chem. Corp. v. Liberty Mutual Ins. Co.*, 168 Ill.App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758, *app. den.*, 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988). In fact, it has recently been noted that "... there is an emerging nationwide judicial consensus that the 'pollution exclusion' clause is unambiguous...." *Technicon Electronics Corp. v. American Home Assurance Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91, 96 (2d Dept.1988).

*Id.* at 569, 557 A.2d at 398. To the same effect is *Techalloy Company, Inc. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), *allocatur denied,* 338 E.D.Allo.Dkt. 1985 (Pa. Oct. 31, 1985), where the Court held that there could be no coverage for a chemical discharge in the face of a pollution exclusion unless the discharge was both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected. See also: *Northern Insurance Co. of New York v. Aardvark Associates, Inc.*, 942 F.2d 189 (3rd Cir.1991); *United States Fidelity & Guaranty Co. v. Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988).

It must be said in this case, therefore, that the policy language in the several policies contains an unambiguous, all-encompassing disclaimer of coverage for damages caused by a migration of polluting gases. See: *Guilford Industries, Inc. v. Liberty Mutual Insurance Co.*, 688 F.Supp. 792, 794 (D.Me. 1988), *aff'd,* 879 F.2d 853 (1st Cir.1989); *Alcolac Inc. v. California Union Ins. Co.*, 716 F.Supp. 1546, 1549 (D.Md. 1989); *League of Minn. Cities Insurance Trust v. City of Coon Rapids*, 446 N.W.2d 419, 421–422 (Minn.Ct.App.1989).

■ Appellant argues, however, that the several exclusionary clauses do not apply to a non-polluter. Here, O'Brien Energy suggests, the averments of the County are that O'Brien Energy was negligent in its design, installation, maintenance and operation of its gas to energy facility and not that it was an active polluter. There is no merit in this argument. Indeed, a similar argument was rejected by the Court of Appeals for the Third Circuit in *Northern Insurance Co. of*

*New York v. Aardvark Associates, Inc., supra.* There, the insured had been engaged in the business of hauling industrial waste to sites for disposal. The Environmental Protection Agency discovered hazardous material at one of the disposal sites and commenced an action to recover cleanup costs from Aardvark pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607(a). When its insurance companies refused to provide coverage under policies of comprehensive general liability insurance, Aardvark commenced an action for declaratory judgment. The United States District Court for the Western District of Pennsylvania entered summary judgment in favor of the insurers, rejecting Aardvark's argument that the pollution exclusion applied only to "active" polluters and not to "passive" polluters. The Third Circuit affirmed. It said:

> [T]he clause in question excludes coverage for bodily injury or property damage "arising out of the discharge, dispersal, release or escape" of pollutants, subject to the exception for "sudden and accidental" discharges.... We have scrutinized this language for any hint that it is limited to "active" polluters or those who "actually release pollutants," but we find no ambiguity and no support for Aardvark's argument. The clause unambiguously withholds coverage for injury or damage "arising out of the discharge, dispersal, release or escape" of pollutants (emphasis added), not merely the insured's discharge, dispersal, release or escape "of pollutants." As the district court aptly wrote in *Federal Insurance Co. v. Susquehanna Broadcasting Co.,* 727 F.Supp. [169, 177 (M.D.Pa.1989), *modified,* 738 F.Supp. 896 (M.D.Pa. 1990), *aff'd,* 928 F.2d 1131 (3d Cir.1991) ], "the exclusion clause makes no reference at all to active polluters or passive polluters. The terms are foreign to the policies in question." See also *Powers Chemco, Inc. v. Federal Ins. Co.,* 74 N.Y.2d 910, 548 N.E.2d 1301, 549 N.Y.S.2d 650 (1989).

*Northern Ins. Co. of New York v. Aardvark Associates, Inc., supra,* 942 F.2d at 194. Accord: *United States Fidelity and*

*Guaranty Co. v. George W. Whitesides Co., Inc.*, 932 F.2d 1169 (6th Cir.1991).

We agree with this interpretation. The language of the several policies is clear. There is no coverage for claims which are based on the escape of pollutants, and this is so irrespective of the role which the insured is alleged to have played in the pollution.

It must also be observed that in this case appellant's argument is based on a false premise. The averments of the County's complaint are not that O'Brien Energy was a passive observer but, rather, that it was "guilty of acts and omissions that flatly resulted in the migration of landfill gas" and also that O'Brien Energy had an affirmative contractual obligation to prevent the migration of methane gas from the landfill.

Finally, appellant argues that an ambiguity in the coverage provided has been created by the added coverage for "personal injury" caused by "wrongful entry or eviction or other invasion of [the] right of private occupancy." Because the SmithKline complaint against Montgomery County contains an averment that the County's negligence has caused both an interference with SmithKline's use and enjoyment of its property, as well as property damage, it is argued that the claim is based on a trespass or nuisance which is equivalent to a "wrongful entry" or other invasion of the right of private occupancy. We reject this argument. First and foremost, the argument fails to consider the effect of the absolute exclusion for polluting gases. This exclusion, as we have observed, is clear and unambiguous. It is equally applicable to claims for personal injury caused by a wrongful entry or eviction. The insurer did not eliminate the exclusionary language by providing additional coverage of the type listed in the "personal injury" endorsement.

In *County of Columbia v. Continental Insurance Co.*, 189 A.D.2d 391, 595 N.Y.S.2d 988 (1993), an underlying complaint had alleged that leachate contamination from the insured's landfill had polluted another's soil, air, ground and surface waters and constituted a continuing trespass and nuisance. A

policy of liability insurance contained a personal injury liability endorsement by which the insurer had agreed to provide coverage for liability claims based on personal injury, which was defined to include, inter alia, an injury arising out of the "wrongful entry or eviction or other invasion of the right of private occupancy." The court, in an action to determine coverage, held that (1) an action for environmental damage to real estate did not constitute a "wrongful entry or eviction or other invasion of the right of private occupancy," and (2) the pollution exclusion was applicable to exclude coverage. The court said:

> Of greatest significance here is the fact that [the insurers'] policies provide comprehensive general liability coverage for property damage which, were it not for its specific pollution exclusion, would clearly cover [the insured's] claim. Under the circumstances, to extend the personal injury coverage to occurrences which fall squarely within the property damage coverage would have the effect of rendering the pollution exclusion meaningless.

*Id.* 595 N.Y.S.2d at 991. Other jurisdictions have construed and applied "personal injury" liability endorsements in a similar manner. See: *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir.1991); *American Universal Insurance Co. v. Whitewood Custom Treaters, Inc.*, 707 F.Supp. 1140, 1144 (D.S.D.1989) (the pollution exclusion carries over into the endorsement providing "personal injury" liability coverage). Cf. *Decorative Center of Houston v. Employers Casualty Co.*, 833 S.W.2d 257 (Tex.Ct.App.1992). Contra: *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037 (7th Cir.1992); *Titan Holdings Syndicate, Inc. v. City of Keene, New Hampshire*, 898 F.2d 265 (1st Cir.1990).

The personal injury endorsement extends liability coverage to the specific torts there enumerated. It affords coverage only for defined risks. These include torts of a recognized type involving damages which can be lumped under the descriptive term "personal injury." The coverage does not provide indemnification for environmental damage claims based on migrating gases. Coverage for such claims is specif-

ically excluded by the pollution exclusion. To hold otherwise would emasculate the clear and unambiguous provisions of the pollution exclusion and could not be justified except as an unwarranted straining to reach a result different than that intended by the parties. The order of the trial court, therefore, will be affirmed.

■ Appellant has requested that costs be assessed against appellees for requiring unnecessary material to be placed in the reproduced record. Pennsylvania R.A.P. 2155 provides as follows:

### Rule 2155. Allocation of Cost of Reproduced Record

(a) **General rule.** Unless the parties otherwise agree the cost of reproducing the record shall initially be paid by the appellant, but if the appellant considers that parts of the record designated by the appellee for inclusion are unnecessary for a determination of the issues presented the appellant may so advise the appellee and the appellee shall advance the cost of including such parts. If the appellee fails to advance such costs within ten days after written demand therefor, the appellant may proceed without reproduction of the parts of the record designated by appellee which the appellant considered to be unnecessary.

(b) **Allocation by court.** The cost of reproducing the record shall be taxed as costs in the case pursuant to Chapter 27 (fees and costs in appellate courts and on appeal), but if either party shall cause material to be included in the reproduced record unnecessarily, the appellate court may on application filed within ten days after the last paperbook is filed, in its order disposing of the appeal impose the cost of reproducing such parts on the designating party.

After careful consideration, we are persuaded that the appellee insurance companies, in fact, requested the reproduction of matters unnecessary to meaningful appellate review. Our review entailed primarily an examination of the policy provisions. The unnecessary material is contained in volumes 3

and 4 of the reproduced record and involved printing costs of $1,451.00. We will assess this amount against the appellees.

Order affirmed. Appellees shall reimburse appellant for the cost of reproducing unnecessary portions of the record in the amount of $1,451.00.