ISLAND ASSOCIATES, INC., Plaintiff,

v.

ERIC GROUP, INC. and Eric Syndicate, Inc., Defendants.

Civ. A. No. 94–0478.

United States District Court, W.D. Pennsylvania.

Jan. 30, 1995.

James R. Mall and Frederick J. Francis, Meyer, Unkovic & Scott, Pittsburgh, PA, for plaintiff.

Robert E. Kelly, Jr. and Allen C. Warshaw, Duane, Morris & Heckscher, Harrisburg, PA, for defendants.

### OPINION

ZIEGLER, Chief Judge.

Pending before the court are cross-motions for summary judgment by plaintiff, Island Associates, Inc., and defendants, ERIC

Group, Inc. and ERIC Syndicate, Inc. ("ERIC").[1] Plaintiff commenced this declaratory judgment action on March 22, 1994, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and diversity of citizenship, 28 U.S.C. § 1332, seeking, in addition to damages and attorney's fees, a declaration that defendants are obligated pursuant to an insurance contract to defend and indemnify plaintiff and Power Contracting, Inc. in three state court personal injury actions in which plaintiff and Power Contracting are defendants. The sole issue before the court is whether the pollution exclusion clause in the policy relieves defendants of those obligations.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because we find that there are no material factual issues in dispute, this action is ripe for summary disposition.

In 1991, Power Contracting was hired by the Butler Veteran's Association Medical Center as the general contractor on a construction project. Power Contracting contracted with plaintiff, Island Associates, for the removal of asbestos for the project. The subcontract required Island to indemnify Power Contracting for any claims, lawsuits or damages resulting from Island's work on the project.

In order to secure the subcontract, Island was required to obtain approval for the project from its insurer, ERIC. Island had purchased a Commercial General Liability and Asbestos Special Liability insurance policy from ERIC on or about March 19, 1991. The policy was renewed on April 1, 1992. On October 17, 1991, Island submitted a Contractor Asbestos Abatement Project Application to ERIC advising defendants of what was involved with regard to the asbestos removal at the hospital and requesting cover-

age for the project under the policy. On October 22, 1991, ERIC provided Endorsement A–6 to the policy, which recognized that the work on the hospital project was covered under the policy.

In January of 1992, Island used a cleaning compound called "Sentinel 787 Mastic Remover" ("Sentinel") to clean and remove asbestos floor tile mastic. Island's use of Sentinel resulted in the commencement in 1993 of three separate personal injury actions in state court against Island and Power Contracting ("the state actions"). The complaints in each of the state actions allege that the plaintiffs were employees of the Butler Veteran's Association Medical Center, that they were exposed to fumes from Sentinel, and that they were harmed by such fumes. In accordance with the terms of the insurance policy, Island timely notified ERIC of each of the state actions and requested that ERIC defend and indemnify Island and Power Contracting. ERIC refused on the basis that the claims made in the state actions were excluded from coverage under the policy pursuant to the pollution exclusion clause.

The pollution exclusion clause provides that the scope of coverage does not encompass:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants, however, wherever or whenever occurring, and by whomever caused or alleged to have been caused.

"Pollutant" is defined to mean:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

The issue before the court is whether the above exclusion relieves ERIC from its obligations to defend and indemnify Island and Power in the state actions.[2]

Under governing Pennsylvania law, the interpretation of an exclusion in an insur-

---

1. Plaintiff has actually filed two separate motions for summary judgment, the first seeking judgment on ERIC's duty to defend and the second seeking judgment on ERIC's duty to indemnify.

2. ERIC does not dispute, should we conclude that the exclusion is inapplicable, that it is obligated to defend and indemnify both Island and Power pursuant to the subcontract between the parties.

ance policy is a question of law for the court. *Curbee, Ltd. v. Rhubart,* 406 Pa.Super. 505, 594 A.2d 733, 735 (1991), *appeal denied,* 529 Pa. 649, 602 A.2d 859 (1992) (citations omitted). The interpretation "must be based on a reading of the policy in its entirety, giving the words thereof their plain and proper meaning." *Id.* The language of the policy "must be tested by what a reasonable person in the position of the insured would have understood the words to mean." *Lucker Mfg. v. Home Insurance Co.,* 23 F.3d 808, 814 (3d Cir.1994). If the test establishes the existence of an ambiguity, the ambiguous language must be construed in favor of the insured. "Nevertheless, a court should be careful not to create an ambiguity and, likewise, it should avoid rewriting the policy language in such a way that it conflicts with the plain meaning of the language." *Id.* (citing *Imperial Casualty & Indem. Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 131 (3d Cir.1988)).

In applying these rules of contract interpretation, the courts must also recognize that "where the insurer creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy." *Bensalem Twp. v. Int'l. Surplus Lines Ins. Co.,* 38 F.3d 1303, 1311 (3d Cir. 1994). In that case, the Court of Appeals recognized that, under Pennsylvania case law, the emerging theme of insurance contract interpretation is that the "courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their customers." *Id.* We must now determine, pursuant to the this law, whether the pollution exclusion clause at issue is unambiguous and represents the reasonable expectation of the insured.

It has been said that "one of the most hotly litigated insurance coverage questions of the late 1980's and early 1990's has been the scope and application of the pollution exclusion contained in the standard commercial general liability (CGL) policy." *Center for Creative Studies v. Aetna Life and Casualty Co.,* 871 F.Supp. 941, 943 (E.D.Mich., 1994) (quoting Jeffrey W. Stempel, *Interpretation of Insurance Contracts: Law and Strategy for Insurers and Policyholders,* p. 825 (1994)). Numerous courts applying Pennsylvania law have considered pollution exclusion clauses. *See, e.g., Northern Ins. Co. v. Aardvark Associates,* 942 F.2d 189 (3d Cir.1991); *St. Leger v. American Fire and Casualty Ins. Company,* 870 F.Supp. 641 (E.D.Pa.1994); *O'Brien Energy v. American Employers' Insurance Co.,* 427 Pa.Super. 456, 629 A.2d 957 (1993); *Lower Paxon Twp. v. U.S. Fidelity and Guaranty Co.,* 383 Pa.Super. 558, 557 A.2d 393 (1989); *Techalloy Company, Inc. v. Reliance Insurance Co.,* 338 Pa.Super. 1, 487 A.2d 820 (1984). Defendant urges that these cases stand for the proposition that pollution exclusion clauses are unambiguous and must be interpreted as written.

▆ The mere fact that Pennsylvania law does not treat pollution exclusions as inherently ambiguous does not necessarily lead to the conclusion that the exclusion in the instant action is unambiguous when applied to the facts of this case. The clarity of the exclusion clause cannot be tested in a vacuum, rather, ERIC must establish that the exclusion clearly and unambiguously applies to exclude from coverage the claims made in the state actions. *See Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Company,* 35 F.3d 494, 496 (10th Cir.1994).

Unfortunately, the existing case law applying Pennsylvania law is not, for the most part, helpful to our analysis. Indeed, in each of the cases relied upon by defendants in support of coverage exclusion, the alleged activity giving rise to the action is readily defined and universally recognized as pollution. *Northern Ins. Co.,* 942 F.2d 189 (insured discharged hazardous waste at disposal sites); *O'Brien Energy,* 629 A.2d 957 (insured, which had been contracted to extract methane gas from landfills, failed to abate the migration of the gas onto adjacent land); *Lower Paxon Twp.,* 557 A.2d 393 (insured township incurred expenses in remedying problem of methane gas escaping from landfills); and *Techalloy Co.,* 487 A.2d 820 (insured dumped hazardous and/or toxic chemicals into water). Thus, it is no surprise that in each of these cases the court held that the

pollution exclusion unambiguously applied to deny coverage.

■ In contrast, we are called upon to decide whether the fumes from a cleaning compound, which have not been identified as hazardous or toxic and which were confined to a small area within a worksite, constitute a "pollutant" which has been "discharged, dispersed, released" or has "escaped". ERIC argues that the fumes from Sentinel clearly fall within the policy's definition of pollutant, which includes any "gaseous . . . irritant or contaminant, including . . . fumes. . . ." Although it would appear that Sentinel fumes (or, for that matter, fumes from any substance) would fall within a broad reading of the definition, we agree with the reasoning of the Court of Appeals in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Company*, 976 F.2d 1037, 1043 (7th Cir.1992), which recognized that a "common sense approach" must be invoked when determining the scope of pollution exclusion clauses.

In *Pipefitters*, the Court of Appeals was called upon to interpret the scope of a pollution exclusion clause which contained a definition of "pollutant" which is identical to the definition before us. The Court cautioned against reading the clause too broadly:

> The terms "irritant" and "contaminant", when viewed in isolation, are virtually boundless, for "there is no substance or chemical in existence that would not irritate or damage some person or property." *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan.1991). Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or proper-

ty damage, one would not ordinarily characterize these events as pollution.

*Id.* at 1043.

The Court went on to reference several other cases rejecting the application of pollution exclusion clauses and noted that:

> [t]he bond that links all these cases is plain. All involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry. There is nothing unusual about paint peeling off of a wall, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spraypainting job. A reasonable policyholder, these courts apparently believed, would not characterize such routine incidents as pollution.

*Id.* at 1044. *See also, Center for Creative Studies v. Aetna Life and Casualty Company*, 871 F.Supp. 941 (E.D.Mich.1994) (applying limiting principle of *Pipefitters* ).

Applying the "common sense approach" espoused in *Pipefitters*, we hold that the pollution exclusion clause at issue is ambiguous when applied to the instant facts. A reasonable person in plaintiff's position could justifiably conclude that Sentinel fumes are not pollutants, as that term is defined in the policy. Moreover, we conclude that the exclusion, if read broadly, would be "virtually boundless" and thus, would impact the scope of coverage far beyond the reasonable expectations of the insured. As rehearsed, where unambiguous terms do not support the reasonable expectations of the insured, that expectation prevails over the language of the policy. *Bensalem Twp.*, 38 F.3d at 1311. Thus, in our view, an insurer that wishes to exclude "everyday activities gone slightly awry" from coverage cannot rely on a broad reading of a pollution exclusion clause.

■ Even if we were to conclude that the term "pollutant" is unambiguous, we would still grant Island's motion for summary judgment because the fumes were not "discharged, dispersed, or released", nor did they "escape" as those terms would typically be defined in an insurance contract. In *Lumbermens Mutual Casualty Company v. S–W Industries, Inc.*, 39 F.3d 1324 (6th Cir. 1994), the insured was an employer sued by

one of its employees for injuries the employee suffered as a result of fumes and dust that he was exposed to at the employer's workplace. In rejecting the insurer's argument that the pollution exclusion clause, which also required that a "discharge, dispersal, release or escape" of the offending substances occur, relieved the insurer of its obligations under the policy, the Court of Appeals stated that:

The fumes and dust that injured Viock [the employee], it is undisputed, were confined inside S–W's [the employer's] plant and, in fact, were confined to that portion of that plant involved in the gluing process in which Viock worked. It strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to Viock's lungs, had somehow been "discharged, dispersed, released or escaped." * * * Without belaboring the obvious, we hold that this exclusion is intended to shield the insurer from the liabilities of the insured to outsiders, either neighboring landowners or governmental entities enforcing environmental laws, rather than injuries caused by toxic substances that are still confined within the area of their intended use.

*Id.* at 1336.

Moreover, at least two courts have deemed the operative terms "discharge", "dispersal", "release" and "escape" to be "environmental terms of art" such that pollution exclusion clauses which utilize these terms are applicable only with respect to discharges of pollutants into the environment. *Center for Creative Studies*, 871 F.Supp. at 944–45; *West American Ins. Company v. Tufco Flooring East, Inc.*, 104 N.C.App. 312, 409 S.E.2d 692, 699 (1991). *See also, St. Leger v. American Fire and Casualty Ins. Company*, 870 F.Supp. 641, 643 (E.D.Pa.1994) (recognizing that a Pennsylvania state trial court rejected the application of a pollution exclusion clause because such clauses are designed for occurrences outside the workplace).

In the instant case, there is no allegation that the Sentinel fumes were discharged or dispersed beyond the area of the hospital in which Island was performing its work under contract. There is also no allegation that the fumes caused or were a threat to cause environmental harm. Simply put, the claims alleged in the state actions arose from a routine workplace incident which a reasonable insured would not expect to be excluded from coverage pursuant to a pollution exclusion clause.

In sum, we hold that the claims asserted in the state actions are not excluded from coverage pursuant to the pollution exclusion clause and summary judgment will be entered in favor of plaintiff. Pursuant to the entry of judgment, defendants will be required to defend and indemnify Island and Power Contracting in the state actions.[3]

**3.** We note that plaintiff's complaint also requested compensatory and punitive damages, along with attorney's fees. However, because plaintiff's motions and briefs do *not* address its right to this relief, neither do we.