**Thomas F. WAGNER, Individually and Trading as Blue Bell Gulf**

v.

**ERIE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 2001.

Filed May 22, 2002.

Reargument Denied Aug. 1, 2002.

Elit R. Felix, II, Philadelphia, for appellant.

John Mattioni, Philadelphia, for appellee.

BEFORE: DEL SOLE, P.J., and FORD ELLIOTT and BECK, JJ.

ELLIOTT, J.

¶ 1 This appeal is the result of cross-motions for summary judgment filed after appellee Thomas Wagner, individually and trading as Blue Bell Gulf ("owner"), filed a

complaint in declaratory judgment against Erie Insurance Company ("insurer") to determine his rights under two policies of insurance he purchased from insurer. The trial court, the Honorable William J. Manfredi, granted owner's motion for summary judgment and denied insurer's motion. For the reasons that follow, we vacate the order granting owner's motion and denying insurer's motion, and enter summary judgment for insurer. The relevant factual and procedural history of the case follows.

¶ 2 Owner owned a self-service gasoline station in May of 1998 when one or more parts of the super grade gasoline line broke, causing extensive damage from the underground leak both to owner's property and to neighboring properties. As a result, the Commonwealth of Pennsylvania brought administrative actions against owner, and numerous personal injury and property damage claims were filed against owner.

¶ 3 Owner had always maintained insurance policies on his service station, including coverage for his storage tanks. In 1989, Pennsylvania enacted the Storage Tank and Spill Prevention Act ("STSPA"), 35 P.S. §§ 6021.101–6021.2104, which included creation of the Underground Storage Tank Indemnification Fund ("USTIF"), 35 P.S. §§ 6021.704–708.[1] The purpose of the Fund was to make "payments to owners, operators and certified tank installers of underground storage tanks who incur liability for taking corrective action or for bodily injury or property damage caused by a sudden or nonsudden release from underground storage tanks and for making loans to owners as authorized by this act." 35 P.S. § 704.(a)(1), 1998, Jan. 30, P.L. 46, No. 13, § 3, imd.

effective. Payments under the Fund are limited to the actual cost of cleanup and damages, not to exceed $1 million. 35 P.S. § 704(b)(1).

¶ 4 After the establishment of the USTIF, owner purchased two insurance policies from insurer, an "Ultraflex Package Policy," No. Q37–0152529 A ("primary policy"), the primary liability policy, and a Business Catastrophe Policy. No. Q25 0171083 A ("excess policy"). The Business Catastrophe policy functions as an excess liability policy, providing protection beyond that provided by the primary liability policy. According to owner, he believed, based on representations made by insurer's agent, that these policies would provide $2 million in coverage beyond the $1 million available under the USTIF for storage tank leaks, and would also provide the cost of defense of claims made as a result of such leaks. (Owner's complaint, 10/5/99 ("complaint") at ¶¶ 10–12; appellee's brief at 2.)

¶ 5 Following the May 8, 1998 underground gasoline line leak, owner therefore notified insurer of his losses and requested that insurer defend and indemnify him for those losses. By letter dated September 21, 1998, however, insurer notified owner that it would be unable to make any payments regarding owner's claim based on the absolute pollution exclusions contained in both policies. Those exclusions follow:

B. Coverages F and G

We do not cover under Bodily Injury Liability (Coverage F) and Property Damage Liability (Coverage G):

. . . .

3. a. damages arising out of the actual, alleged or threatened dis-

---

1. The legislature has amended both the Act and the Fund several times since they were enacted or established in 1989.

charge, dispersal, release or escape of **pollutants:**

1) at or from premises **you** own, rent or occupy:

. . . .

b. any loss, cost or expense arising out of any:

1) request, demand or order that **anyone we protect** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants;** or

2) claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

Primary policy at 25, complaint at exhibit 1, R.R. at 148a. The policy defines pollutants as:

'**Pollutants**' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at 7, complaint at exhibit 1, R.R. at 130a. In addition, the excess policy provides:

**WHAT WE DO NOT COVER—EXCLUSIONS**

**We** do not cover:

. . . .

19. injury or damage caused by, contributed to or arising out of the actual, alleged or threatened discharge, dispersal, release, or escape of smoke, vapors, soot, fumes,

acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, pollutants or contaminants into or upon the land, the atmosphere or any course of or body of water, whether above or below ground.

It is understood and agreed that the intent and effect of this exclusion is to delete from any and all coverages afforded by this policy any loss caused by pollutants. Loss includes but is not limited to any claim, **suit**, action, judgment, liability, settlement, defense or expenses (including any loss, cost or expense arising out of any governmental direction or request that **anyone we protect** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual, alleged or threatened discharge, dispersal, release or escape, whether such loss results from the activities of **anyone we protect** or the activities of others, and whether or not such loss is accidental, intended, forseeable [sic], expected, fortuitous or inevitable, and wherever such loss occurs.

Excess policy at 5, 7, complaint at exhibit 1, R.R. at 422a, 424a (emphasis in original).

¶ 6 Having received notice that insurer would not cover owner's losses, owner filed a complaint on October 5, 1999, in which he asked the court to declare that insurer had a duty to defend and/or pay for the investigation and defense of claims brought against owner, and to declare that insurer had a duty to indemnify owner for his losses. Owner also brought two counts for breach of contract, one for failure to defend, and one for failure to indemnify owner. (Complaint, R.R. at 8a–19a.) [2]

---

2. Owner did not, however, bring counts for negligent or fraudulent misrepresentation

based upon representations allegedly made by insurer's agent that the policies owner pur-

¶ 7 On December 20, 2000, insurer filed a motion for summary judgment based on the clear language of its policies. Insurer also cited as binding Pennsylvania precedent our supreme court's decision in *Madison Construction Co. v. The Harleysville Ins. Co.*, 557 Pa. 595, 735 A.2d 100 (1999), a case involving injury from exposure to fumes emanating from a floor sealant, and this court's opinion in *Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607 (Pa.Super.1999), *reversed*, 567 Pa. 98, 785 A.2d 975 (2001), a lead-based paint poisoning case.[3]

¶ 8 Owner filed an answer and cross-motion for summary judgment on January 26, 2001, alleging that when properly construed, the insurance policies provide coverage, and that the policies are ambiguous. On March 21, 2001, insurer filed an addendum to its memorandum of law, noting that this court sitting *en banc* had endorsed the *Lititz* panel's decision in *Fayette County Housing Authority v. Housing and Redevelopment Ins. Exchange* ("*Fayette County*"), 771 A.2d 11 (Pa.Super.2001) (en banc), allocatur granted, remanded to the trial court for consideration of the supreme court's decision in *Lititz*, 793 A.2d 902, 2002 WL 464001 (Pa. 2002) (**per curiam**).[4] Shortly thereafter, on March 29, 2001, the trial court entered its order granting owner's motion for summary judgment and denying insurer's motion. This timely appeal followed, in which insurer raises a single issue:

WHETHER AN 'ABSOLUTE' POLLUTION EXCLUSION IN A PRIMARY LIABILITY POLICY AND A 'TOTAL' POLLUTION EXCLUSION IN AN EXCESS POLICY BAR ALL COVERAGE THEREUNDER AS A MATTER OF LAW FOR ANY DAMAGES ALLEGEDLY RESULTING FROM A LEAK OF GASOLINE AT THE INSURED'S SERVICE STATION.

Appellant's brief at 3.

As stated by our Supreme Court, when reviewing summary judgment cases:

[W]e must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Fayette County*, 771 A.2d at 13, quoting *Washington v. Baxter*, 553 Pa. 434, 441,

---

chased would provide coverage for damage arising from underground gasoline leaks.

**3.** The supreme court in *Lititz* agreed with this court that "the definition of 'pollutant' in the pollution exclusion clause unambiguously encompasses lead-based paint." *Lititz, supra* at ——, 785 A.2d at 980. Nevertheless, the *Lititz* court found ambiguous the exclusion's requirement of 'discharge, dispersal, release or escape' of pollutants when applied in the context of lead-based paint deterioration. *Id.* at 982. It was on the basis of that ambiguity that the supreme court reversed this court.

**4.** While one panel of this court was considering the appeal in *Fayette County*, the *Lititz* panel filed an opinion deciding the identical issues; therefore, the *Fayette County* panel requested *en banc* certification. *Fayette County*, 771 A.2d at 12–13.

719 A.2d 733, 737 (1998) (citations and quotation marks omitted).

■ ¶ 9 Interpretation of an insurance contract is a matter of law and is therefore generally performed by a court rather than by a jury. *Madison Construction, supra* at 606, 735 A.2d at 106. "In interpreting the language of a policy, the goal is 'to ascertain the intent of the parties as manifested by the language of the written instrument.'" *The Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1231–1232 (Pa.Super.2001), quoting *Madison Construction, supra* at 606, 735 A.2d at 106. "Indeed, our Supreme Court has instructed that the 'polestar of our inquiry ... is the language of the insurance policy.'" *Id.* at 1232, quoting *Madison Construction, supra* at 606, 735 A.2d at 106.

■ ¶ 10 "'Where ... the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language.'" *Madison Construction, supra* at 606, 735 A.2d at 106, quoting *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n.*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (other citations omitted). When construing a policy, "[w]ords of common usage ... are to be construed in their natural, plain and ordinary sense ... and we may inform our understanding of these terms by considering their dictionary definitions." *Id.* at 608, 735 A.2d at 108 (citations omitted).

■ ¶ 11 While a court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity[,]" it must find that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* at 606, 735 A.2d at 106. "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the

insurer, the drafter of the agreement." *Id.*, quoting *Gene & Harvey Builders, supra* at 426, 517 A.2d at 913 (other citations omitted).

■ ¶ 12 When an insurer such as Erie relies on a policy exclusion as the basis for its denial of coverage, it has asserted an affirmative defense and thus bears the burden of proving such a defense. *Fayette County*, 771 A.2d at 13, citing *Madison Construction, supra* at 604–606, 735 A.2d at 106 (other citation omitted). To prevail, Erie must prove that the language of the insurance contract is clear and unambiguous; otherwise, the provision will be construed in favor of the insured. *Id.* Moreover, when the question is one of contract interpretation, public policy arguments are irrelevant. *Madison Construction, supra* at 611 n. 7, 735 A.2d at 108 n. 7.

¶ 13 *Madison Construction* further instructs that we must determine whether the specific substance at issue, in this case gasoline, is a pollutant within the meaning of the particular insurance contract under the facts of this case. *Id.* at 606–607, 735 A.2d at 107. As the *Madison Construction* court opined:

> The pertinent inquiry is ... whether the policy's definition of 'pollutant' is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

*Id.*

■ ¶ 14 In this case, the primary policy defines "pollutant" as, **inter alia**, "any solid, liquid, gaseous or thermal irritant or contaminant, including ... chemicals...." (Primary policy at 7, R.R. at 130a.) Own-

er does not really claim that gasoline is not a liquid, a chemical, or a contaminant. Rather, owner claims that if an insurer wishes to include gasoline as a pollutant in an insurance policy insuring a gasoline service station, it should list gasoline as a pollutant. (Appellee's brief at 9, quoting and citing *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948–949 (Ind. 1996).) According to owner, insurer's failure to identify gasoline as a pollutant rendered the policy ambiguous because "it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability." (Appellee's brief at 10–11, quoting *Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510, 514, 518 (Mo.App.1999), following *Kiger, supra.*) Owner also claims that insurer should be required to defend and indemnify him for his losses because he reasonably expected the policies to protect him in the event of exactly the sort of risk that occurred. (Appellee's brief at 28.)

¶ 15 We do not, however, believe that either owner or the trial court has properly interpreted *Madison Construction's* direction to consider the particular facts when deciding whether a provision in a contract is ambiguous. Instead of focusing on the fact that owner is the owner of a gasoline station, and therefore gasoline should not be considered a pollutant, we conclude that the proper focus is on the "specific product at issue[ ]" in relation to the events giving rise to owner's claim, that product's leakage from underground gasoline lines.

¶ 16 Following the supreme court's lead, we turn to the dictionary for guidance. Webster's Ninth New Collegiate Dictionary defines gasoline as a "volatile flammable liquid hydrocarbon ... blended from several products of natural gas and

petroleum." Webster's Ninth New Collegiate Dictionary 507 (1987). A hydrocarbon is "an organic compound containing only carbon and hydrogen ..." *id.* at 589, and is therefore a chemical. It is indisputable that in the context of permeating soil surrounding an underground storage tank or line, gasoline is a contaminant, a substance that "make[s] unfit for use" that with which it comes into contact "by the introduction of unwholesome or undesirable elements." *Id.* at 283. In fact, the Commonwealth created the USTIF in recognition of the fact that underground gasoline leaks pose a danger to the public. The STSPA defines a "Regulated substance" as follows:

**'Regulated substance.'** An element, compound, mixture, solution or substance that, when released into the environment, may present substantial danger to the public health, welfare or the environment which is:

....

(2) petroleum, including ... hydrocarbons which are liquid at standard conditions of temperature and pressure ... including, but not limited to ... gasoline....

....

35 P.S. § 6021.103, 1996, May 10, P.L. 171, No. 34, § 1, effective in 60 days.

¶ 17 We recognize that a number of jurisdictions have found absolute pollution exclusion clauses inapplicable to gasoline in policies insuring gasoline service stations. *See e.g., Hocker Oil*, 997 S.W.2d at 518; *Kiger*, 662 N.E.2d at 949. As the *Hocker Oil* court noted, however, a number of jurisdictions have also found that gasoline is a pollutant, even in policies insuring gasoline service stations, and is therefore excluded from coverage because of absolute pollution exclusion clauses the same as or similar to the clauses at issue here. *Hocker Oil*, 997 S.W.2d at 516–517

(collecting cases). Importantly, the *Hocker Oil* court also observed, "the cases, however, did not view the language in the respective exclusions 'in light of the "meaning that would ordinarily be understood *by the layman who bought and paid for the policy,"* ' as Missouri courts must do." *Id.* at 517 (emphasis in *Hocker Oil* ) (citation omitted).

¶ 18 Pennsylvania, however, does not follow the rule articulated by the *Hocker Oil* court when construing the language of insurance policies: As our supreme court made patently clear in *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983), "[W]here, as here, the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Id.* at 307, 469 A.2d at 567.

¶ 19 We also find unconvincing owner's argument that to consider gasoline a pollutant under the facts of this case is to eviscerate the insurance policies he purchased. As the *Hocker Oil* court noted in its review of *Crescent Oil Co. v. Federal Mut. Ins. Co.,* 20 Kan.App.2d 428, 888 P.2d 869 (1995), one of the cases finding a pollution exclusion applicable to an underground gasoline storage tank at a gasoline station and convenience store, "gasoline 'is not a "pollutant" until introduced into an environment in which it does not belong, i.e., the soil.' " *Hocker Oil,* 997 S.W.2d at 518, quoting *Crescent Oil,* 888 P.2d at 874. Furthermore, as amicus indicates in its brief to this court, the policy at issue would cover non-pollution related occurrences such as fire, slip-and-fall accidents, or injuries resulting from negligent use of heavy equipment. (Brief of Amicus Curiae, Ins. Environmental Litigation Assoc. at 14 n. 4.)

¶ 20 We acknowledge our supreme court's recognition of the fact that in some cases, the unequal bargaining power between an insurer and purchaser of insurance might allow a court to deviate from the plain language of an insurance contract. *Standard Venetian Blind Co., supra* at 307, 469 A.2d at 567. We do not believe, however, that this is such a case. Owner is not an inexperienced layperson; he is a businessman who has owned and operated gasoline service stations since at least 1972. (Appellee's brief at 1.) It was therefore incumbent upon him to read the policies and, if necessary, to ask questions or obtain advice before purchasing them. Having failed to do so, he cannot now be heard to claim he was unaware of their terms.

¶ 21 Apparently for the first time on appeal, however, owner raises in the "counterstatement of questions" section of his appellate brief at least one issue we have not discussed: "Whether there is coverage for the leaking of gasoline under the Personal Injury Liability Section of the policy for 'wrongful entry,' even if excluded under the Bodily Injury and Property Damage Liability Sections?" (Appellee's brief at vi.) While we may affirm a trial court on any basis, *McAdoo Borough v. Commonwealth, Pennsylvania Labor Relations Bd.,* 506 Pa. 422, 485 A.2d 761 (1984), we are limited to considering only those issues the trial court had an opportunity to assess. Because owner did not raise this issue in his cross-motion for summary judgment and therefore did not give the trial court an opportunity to consider it, we must find it waived. *See* Pa. R.App.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[ ]"); *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 626 A.2d 595, 599 (1993) (matters raised for the first time on appeal

are not properly preserved for appellate review and will not be considered).

 ¶ 22 Even if we were to address the issue, however, we could not affirm the trial court's grant of summary judgment as we find controlling this court's decision in *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 629 A.2d 957 (.1993), *appeal denied*, 537 Pa. 633, 642 A.2d 487 (1994). In *O'Brien*, a panel of this court held that an absolute pollution exclusion clause applied equally to claims of personal injury caused by a wrongful entry or eviction. *Id.* at 963. As the *O'Brien* court opined, "The insurer did not eliminate the exclusionary language by providing additional coverage of the type listed in the 'personal injury' endorsement." *Id.* As a result, we find no merit to this issue.

 ¶ 23 Finally, we must address owner's claim that insurer had a duty to defend, regardless of its duty to indemnify. (Appellee's brief at vi.) While we recognize that a duty to defend is broader than a duty to indemnify, we also recognize that "[t]he insurer's duty to defend the insured is dependent upon the coverage afforded by the insured's policy." *O'Brien*, 629 A.2d at 960 (citation omitted). As the *O'Brien* court continued:

> If the factual allegations of the complaint against the insured state a claim which would potentially fall within the coverage of the policy, then the insurer has the duty to defend. As the Supreme Court has stated, '[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend.' In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within

the coverage of the policy to be resolved in favor of the insured.

*Id.*, quoting *Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992), *appeal denied*, 532 Pa. 653, 615 A.2d 1310 (1992) (citations omitted).

 ¶ 24 In this case, we have already determined that the policy at issue clearly and unambiguously excludes owner's claim for coverage due to harm caused by gasoline leakage into the soil. As a result, we must also conclude that insurer did not have a duty to defend owner against claims for harm caused by that leakage.

¶ 25 Order granting summary judgment to owner and denying summary judgment to insurer is vacated. Summary judgment is granted to insurer and denied to owner. Jurisdiction is relinquished.