**Petition for Reinstatement from Inactive Status.**

**No. 98 DB 1999.**

Supreme Court of Pennsylvania.

March 1, 2000.

*ORDER*

PER CURIAM:

AND NOW, this 1st day of March, 2000, The Report and Recommendations of The Disciplinary Board of the Supreme Court of Pennsylvania dated February 1, 2000, are approved and IT IS ORDERED that JOSEPH D. FRANCIONE, who has been on inactive status, has never been suspended or disbarred, and has demonstrated that he has the moral qualifications, competency and learning in law required for admission to practice in the Commonwealth, shall be and is, hereby reinstated to active status as a member of the Bar of this Commonwealth. The expenses incurred by the Board in the investigation and processing of the Petition for Reinstatement shall be paid by the Petitioner.

**Robert C. GREEN and Judith A. Green, Petitioners,**

v.

**SCHUYLKILL COUNTY BOARD OF ASSESSMENT APPEALS, Respondent.**

Supreme Court of Pennsylvania.

March 6, 2000.

Michael P. Weinstein, Philadelphia, for petitioner.

*ORDER*

PER CURIAM:

AND NOW, this 6 th day of March, 2000, the Petition for Allowance of Appeal is GRANTED, limited to the following issue:

Did the Commonwealth Court err in failing to follow the precedents of this Court concerning the proper standard of proof in real estate tax assessment appeals?

**LITITZ MUTUAL INSURANCE CO., Appellant (at 1719),**

v.

**Clifford STEELY, Barbara Steely, Steven Brown, Minor, by Ethel Brown, Guardian, Jack Yeager and Shirley Yeager, Appellees.**

**Lititz Mutual Insurance Co., Appellee,**

v.

**Clifford Steely, Barbara Steely, Steven Brown, a minor, by Ethel Brown, his guardian, Jack Yeager and Shirley Yeager.**

**Appeal of Clifford and Barbara Steely (at 28).**

Superior Court of Pennsylvania.

Argued Sept. 1, 1999.

Filed Dec. 28, 1999.

Reargument denied March 10, 2000.

Timothy J. Huber, Lebanon, for Lititz.

Rory O. Connaughton, Lancaster, for Steely.

Paul F. Lantieri, Philadelphia, for Yeager.

Peter R. Kohn, Philadelphia, for Brown.

John A. MacDonald, Philadelphia, amicus curiae.

Before JOHNSON, JOYCE and TAMILIA, JJ.

JOYCE, J.:

¶ 1 These consolidated appeals arise from the order entered October 21, 1998. This order granted Clifford and Barbara Steely's (Steely) as well as Jack and Shirley Yeager's (Yeager) motion for summary judgment as it related to policy coverage questions and the duty to defend. It also dismissed without prejudice the parties' request for relief and indemnification.[1]

---

1. For the sake of clarity and understanding, we designate Lititz as Appellant and the Steelys as Appellees.

Lititz Mutual Insurance Co. (Lititz) appeals that portion of the order granting Steely and Yeager summary judgment. Both Steely and Yeager cross-appeal that portion of the order dismissing Lititz's duty to indemnify.[2] For the following reasons, we reverse and remand for further proceedings consistent with this opinion. Because we reverse the trial court's order granting summary judgment, the ruling regarding the duty to indemnify is rendered moot. Before addressing the merits of Appellant's claim, we will briefly recount the pertinent facts and procedural history of this case.

¶ 2 From February 27, 1988 to June 29, 1993, Steven Brown a minor, resided in a rental property owned by the Steelys. From July of 1993 to March of 1995, Steven resided in property owned by the Yeagers. While living in these rental properties, Steven suffered lead poisoning through the inhalation/ingestion of lead-based paint dust/chips. As a result, on November 25, 1996, Steven's mother, Ethel Brown, instituted suit against the Steelys and the Yeagers, alleging negligence, breach of implied warranty of habitability and misrepresentation.

¶ 3 Appellees were insured under a commercial liability policy issued by Appellant. The policy contained a pollution exclusion clause. Appellee informed Appellant of the suit brought by the Browns and sought coverage. Appellant denied coverage and refused to defend. Appellant sought a declaratory judgment that they did not owe insurance coverage to the Appellees in the underlying lead-based paint poisoning action because of the policy's pollution exclusion. Appellant then moved for summary judgment.

¶ 4 The trial court found the insurance contract ambiguous both as to the term "pollutant" and the terms "discharge, dispersal, release or escape of pollutants." As the court found these terms to be ambiguous, it construed the contract to the benefit of the insured. Accordingly, the court denied Appellant's motion for summary judgment.

¶ 5 Thereafter, Appellees and Yeagers filed motions for summary judgment against Appellant. On October 21, 1998, following oral argument, the trial court granted their motions for summary judgment as to the coverage issue and the duty to defend. However, the court dismissed without prejudice that part of the motion dealing with Appellant's duty to indemnify. Appellant timely appealed. Appellees cross-appealed that part of the order dismissing without prejudice the trial court's ruling on the duty to indemnify.

In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

---

2. We note that the Steelys are the only party insured by Lititz. Thus the Yeagers, who are not insured by Lititz, have no interest in this declaratory action and appeal therefrom. While the Yeagers may be intimately involved in the underlying lawsuit, they have no standing before this Court on the matter of whether Lititz owes a duty to defend to their policyholder, Steely. *See Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 256 n. 6, 721 A.2d 43, 46 n. 6 (1998) (finding that concept of standing is that person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge).

*Washington v. Baxter*, 553 Pa. 434, 441, 719 A.2d 733, 737 (1998) (citations and quotation marks omitted).

¶ 6 The sole issue raised by Appellant is whether the trial court properly granted summary judgment on the issue of coverage and the duty to defend because it found the terms of the insurance policy ambiguous. In addition, Appellees claim that the trial court erred in its determination that it is premature to rule on the issue of the duty to indemnify. While this court has addressed the pollution exclusion clause as it relates to other issues, we have not yet considered whether the exclusion precludes coverage for injury resulting from a lead-based paint poisoning claim. Our Supreme Court's recent holding in *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100 (Pa.1999), serves to guide us in our interpretation of the current case.[3] While the present case deals with lead-based paint poisoning and *Madison* dealt with injury arising from exposure to fumes from a floor coating, *Madison* is similar in that it analyzes an aspect of the pollution exclusion clause previously not addressed by the courts of Pennsylvania. Accordingly, *Madison* provides a road map for this and any other challenge to the pollution exclusion clause.[4]

¶ 7 The exclusion upon which Appellant relies provides that coverage does not apply:

(1) [T]o bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants;

(a) at or from premises owned, rented or occupied by the named insured;

3. We note that the trial court did not have the benefit of our Supreme Court's discussion and analysis of the issues in *Madison*.

4. We note that the question before us is whether the pollution exclusion clause, contained in the insurance contract entered into between the parties, by its terms operates to relieve Lititz of its obligation to defend in the underlying personal injury action. There is

Policy at endorsement IL 09280685. The policy further defines pollutants to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.*

¶ 8 Appellant has asserted the exclusion as an affirmative defense and thus bears the burden of proving such a defense. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. at 604–06, 735 A.2d at 106. To meet its burden, Appellant must prove that the language of the contract is clear and unambiguous; otherwise, the provision will be construed in favor of the insured. *Id.* The terms used in the pollution exclusion will be considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Id.*

¶ 9 Appellees argue that the exclusion is ambiguous as to whether or not lead-based paint is a pollutant. Citing *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037 (7th Cir.1992), Appellees contend that under the terms of the exclusion, every substance in existence qualifies as a pollutant, thus making the clause ambiguous. Steely Brief, at 15–16 and 22. As our Supreme Court has stated:

The pertinent inquiry is not, ..., whether the policy's definition of "pollutant" is so broad that virtually any substance, including many useful and necessary products, could come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

no claim of unconscionability before us. The question of whether the insurance industry should be allowed to issue commercial general liability policies containing the absolute pollution exclusion clause is a matter for the legislature and the Insurance Commissioner of the Commonwealth. *Madison*, 557 Pa. at 610 n. 7, 735 A.2d at 108 n. 7.

*Madison*, 557 Pa. at 606–07, 735 A.2d at 107.

¶ 10 With regard to the product at issue, i.e. lead-based paint, we find instructive the affidavits from Ellen K. Silbergeld, Ph.D., James Girard, Ph.D., and James W. Shockley, all of whom are experts on the subject of lead poisoning and lead-based paint. The affidavits explain that lead-based paint poisoning occurs when children are exposed to paint chips/dust, containing lead, that have deteriorated, flaked or abraded from the surface to which it was applied. Silbergeld Affidavit, at paragraph 5; Girard Affidavit, at paragraph 3; Shockley Affidavit, at paragraph 4. Research in the mid-seventies showed that lead poisoning, via paint that contains lead, could occur through the contamination of household dust with small/microscopic particles of paint dust that are shed from a painted surface by the process of exfoliation. Silbergeld Affidavit, at paragraph 6. Finally, lead was a common ingredient used extensively to pigment paint until the late 1970's. Silbergeld Affidavit, at paragraph 8; Girard Affidavit, at paragraph 5; Shockley Affidavit, at paragraph 6.

¶ 11 Ingestion of household dust containing lead from deteriorating or abraded lead-based paint is the most common cause of lead poisoning in children. *St. Leger v. American Fire and Casualty Insurance Company*, 870 F.Supp. 641 (E.D.Pa.1994); 42 U.S.C. § 4851(4). Exposure to lead from lead-contaminated paint/dust that would result in adverse human health effects is labeled a "hazard" in the Residential Lead Based Paint Hazard Reduction Act of 1992. *St. Leger, supra*; 42 U.S.C. § 4851 b(15). Lead has been identified as a pollutant in the context of ambient air quality mandated by the Clean Air Act. *St. Leger, supra*; 40 C.F.R. §§ 50.2, 50.12.

¶ 12 Thus, lead-based paint is not innocuous; exposure to lead in lead-based paint has been extensively studied and its deleterious effects are well known. Indeed, it is for this very reason that in 1978 regulations banned the use of lead in residential paint. Accordingly, the definition of pollutant clearly and unambiguously applies to lead-based paint. *See Madison*, 557 Pa. at 606–08, 735 A.2d at 107 (1999) (finding a floor coating consisting of xylene, cumene and styrene to be a pollutant under the exclusion clause).

¶ 13 Appellees assert that the lead poisoning occurred by ingesting the paint itself, and that lead is never discharged, dispersed or released from the paint. Steely Brief, at 21. For support, they rely upon this Court's opinion in *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 451 Pa.Super. 136, 678 A.2d 802 (1996) (*en banc*), *aff'd*, 557 Pa. 595, 735 A.2d 100 (1999); Steely Brief at 21. In *Madison*, this Court found that the fumes emitted by the floor covering agent to be a pollutant, but not the agent itself. Appellees thus argue that because the curing agent itself was not a pollutant, the lead-based paint cannot be deemed a pollutant. Steely Brief, at 21. However, this approach was expressly rejected by our Supreme Court in *Madison*. Rather the Supreme Court held that while the form of the agent may have changed, its chemical composition did not and, therefore, the curing agent was itself a pollutant. *Madison*, 557 Pa. at 606–08, 735 A.2d at 107.

■ ¶ 14 Likewise, we find no merit to Appellees' argument that lead-based paint is not a pollutant even though the lead may be. While the form of the paint may have changed from paint on a wall to particles of paint dust flaked or exfoliated from the wall, its chemical composition has not changed. Therefore, lead-based paint is a pollutant. *Madison, supra*. Having determined that the exclusion's definition of pollutant unambiguously applies to lead based paint, we must now consider whether the policy's requirement that the injury arise out of an "actual, alleged or threatened discharge, dispersal, release or escape of pollutants" is likewise unambiguous given the facts of the present case.

**612**

¶ 15 Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense and the language of the policy may be understood by reviewing their dictionary definitions. *Madison*, 557 Pa. at 608–10, 735 A.2d at 108. In construing a similar clause, our Supreme Court has said:

> Webster's Ninth New Collegiate Dictionary (1990) defines "discharge" as, in pertinent part, "a flowing or issuing out." The same source defines "dispersal" as "the act or result of dispersing," especially "the process or result of the spreading of organisms from one place to another." ... A "release" is "the act or an instance of liberating or freeing (as from restraint)." Finally, an "escape" is an "act or instance of escaping: as ... flight from confinement ... [or] leakage or outflow[,] esp[.] of a fluid."

*Id.* The Supreme Court concluded the element of movement was the common thread to all these terms. It further determined that the language of the exclusion, by listing numerous similar terms such as "discharge" and "dispersal," preceded by the phrase "actual, alleged or threatened," considered all types and degrees of movement. *Id.*

¶ 16 The exclusion, thus interpreted, applies to the incident at issue. In other words, a pollutant, i.e. lead-based paint, applied to the walls of a residential dwelling, over time exfoliated, abraded, flaked, deteriorated or otherwise moved off of the walls as small particles of paint dust. *See Madison*, 557 Pa. at 608–10, 735 A.2d at 108 (finding that a floor coating, which was a pollutant when applied to the surface of concrete, was dispersed when fumes from the coating evaporated into air above and around the concrete).

¶ 17 Additionally, Appellees, relying on cases from other jurisdictions, argue that the language, "discharge, dispersal, release or escape of pollutants", are terms of environmental law and that the ordinary consumer could interpret the pollution exclusion as applying to environmental pollution only. Steely Brief, at 16. Hence, their argument is that lead-based paint, when released into the environment is pollution, whereas lead-based paint flaking from the walls of a residential dwelling is not pollution. They assert that the "environmental" reading of the exclusion garners as much acceptance as any other analysis, therefore an ambiguity must exist. This analysis was expressly rejected by our Supreme Court which declared:

> If the pollution exclusion clause, by its express terms, does not require that a discharge or dispersal be "into the environment" or "into the atmosphere," then the court is not at liberty to insert such a requirement in order to effect what it considers to be the true or correct meaning of the clause. The court's only aim, as noted earlier, must be "to ascertain the intent of the parties as manifested by the language of the written instrument..."

*Madison*, 557 Pa. at 609–10, 735 A.2d at 108 (citation omitted).

¶ 18 Finally, Appellees contend that because courts in other jurisdictions have differed in their interpretation of these terms, they must be ambiguous. Our Court rejected this argument finding that we would be "abdicating our judicial role were we to decide such cases by the purely mechanical process of searching the nation's courts to ascertain if there are conflicting decisions." *Lower Paxton Tp. v. U.S. Fid. and Guar. Co.*, 383 Pa.Super. 558, 557 A.2d 393, 400 n. 4 (1989). The law of Pennsylvania is that where the language of a contract is clear and unambiguous, the court is required to give effect to that language. *Madison*, 557 Pa. at 604–06, 735 A.2d at 106. When the terms of the pollution exclusion are construed in their plain and ordinary sense, we find that the pollution exclusion clearly applies to the particular set of facts presently being considered.

¶ 19 For the above reasons, the trial court erred in finding the policy to be

ambiguous. We accordingly reverse the order granting Appellees' motion for summary judgment. In light of our conclusion that the pollution exclusion is unambiguous and, hence, that no coverage exists, it follows that Appellees are not entitled to indemnification. Because no coverage exists, Lititz is entitled to entry of judgment. Consequently, we remand this matter and direct the trial court to enter an order in favor of Lititz Mutual Insurance Company.

¶ 20 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

¶ 21 JOHNSON, J. files Dissenting Opinion.

JOHNSON, J., dissenting:

¶ 1 I respectfully dissent from my distinguished colleague's Majority Opinion directing the trial court to enter summary judgment in favor of Lititz Mutual Insurance Company (Lititz). The Majority concludes that the pollution exclusion in the insurance policy provided by Lititz unambiguously applies to cases of lead poisoning from ingestion or inhalation of lead-based paint in residential settings. Initially, I disagree with the Majority's conclusion that the pollution exclusion is implicated. The underlying claims do not "[arise] out of the ... discharge, dispersal, release or escape of pollutants." Policy at endorsement IL 09280685. Instead, the nature of the claims underlying this dispute involve causes of action such as breach of implied warranty of habitability and misrepresentation, and therefore do not trigger application of the pollution exclusion.

¶ 2 "It has long been the law of Pennsylvania that the *nature* of the allegations contained in a complaint control whether an insurer must defend a policyholder." *Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A.2d 665, 668 (Pa.Super.1997) (concluding that nature of plaintiff's claims consisted of sexual harassment and gender discrimination and, therefore, were not covered by policy that provided coverage

for claims of false imprisonment, defamation, or invasion of privacy). Likewise, it is the insurer's absolute obligation to establish that an insurance policy exclusion applies to the circumstances asserted in the underlying claim. *O'Brien Energy Sys. v. Am. Employers' Ins. Co.*, 427 Pa.Super. 456, 629 A.2d 957, 960 (1993) (citing *Harford Mut. Ins. Co. v. Moorhead*, 396 Pa.Super. 234, 578 A.2d 492, 494 (1990) ("If the factual allegations of the complaint against the insured state a claim which would potentially fall within the coverage of the policy, then the insurer has the duty to defend.")). Thus, "[i]t is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend." *Id.* (quoting *Springfield Township v. Indemnity Ins. Co. of N. Am.*, 361 Pa. 461, 464, 64 A.2d 761, 762 (1949)). "[I]n determining whether an insurer has a duty to defend, the averments contained in the underlying complaint must be 'liberally construed with all doubts as to whether the claims may fall within the policy coverage to be resolved in favor of the insured.'" *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 112 (1999) (Nigro, J., dissenting) (quoting *Roman*, 704 A.2d at 669).

¶ 3 Thus, according to *Roman*, the trial court must determine if the allegations and claims raised in the underlying complaint of the injured party, Steven Brown, arise out of the "actual, alleged or threatened discharge, dispersal, release or escape of pollutants." Brown's complaint alleges that the lead poisoning occurred from the "ingestion and inhalation" of lead-based paint. Complaint at 2. Legally and factually, the underlying concepts are distinguishable. The nature of the causes of action in Brown's complaint does not trigger the pollution exclusion. *See* Complaint at 4–8. For example, in his negligence count, Brown avers that his landlord (the Steelys) knew or should have known of the dangers posed to children from the ingestion of lead-based paint, and the landlord knew that their residential

property rented to the Browns contained lead-based paint, but failed to abate the problem. Complaint at 5 & 6. Brown further avers that the landlord breached their duty to use reasonable and due care by, *inter alia*, failing to warn the Browns of the existence of a potentially dangerous condition, renting a property that was unsafe for human habitation, and failing to comply with applicable landlord-tenant laws, regulations, and standards. *Id.* at 6. In order to grant summary judgment to Lititz, the trial court would have to conclude that the nature of Brown's negligence claim "[arose] out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." However, the Browns' allegations are based on, *inter alia*, the landlord's negligent conduct in failing to provide a safe and habitable rental property and the landlord's purposeful non-compliance with landlord-tenant laws, regulations and standards. Another example is the cause of action for misrepresentation in Brown's complaint. Brown alleges that the landlord "fraudulently, intentionally, wilfully and wantonly, purposefully, knowingly, recklessly, negligently and/or in fact materially misrepresented that their subject premises were free from lead-based paint" in order to induce the Browns into renting the property. Complaint at 7. Brown's complaint primarily implicates the landlord's alleged misconduct rather than the "discharge, dispersal, release or escape" of pollutants.

¶ 4 Since the duty of an insurer to defend its insured is broader than the duty to indemnify, *Roman*, 704 A.2d at 668, and any doubt as to whether the underlying claims fall within the exclusion must be resolved in favor of the insured, I must conclude that the trial court did not err in finding that Lititz has a duty to defend the Steelys. I would, therefore, affirm the order of the trial court for the foregoing reasons.

¶ 5 Moreover, summary judgment in favor of Lititz is improper because of the outstanding questions of material fact presented in this case. I agree with the Majority's recitation of the standard of review for orders granting summary judgment. However, both the applicable rules and our cases preclude entry of summary judgment in the presence of questions of material fact. Pa.R.C.P. 1035.2(1). "Summary judgment is ... improper in any case where the pleadings and discovery indicate that there are factual issues that, if resolved in favor of the non-movant at trial, will justify recovery under any theory." *Kelly by Kelly v. Ickes*, 427 Pa.Super. 542, 629 A.2d 1002, 1005 (1993).

¶ 6 In this case, the evidence presented by the Steelys and Browns clearly raises questions of material fact. This evidence directly disputes whether the harm alleged, i.e. lead poisoning, can result merely from the "discharge, dispersal, release, or escape" of lead from lead-based paint. The Steelys and Browns produced three expert witnesses who agreed that lead poisoning from lead-based paint does not result from the "discharge, dispersal, release, or escape of lead from lead-based paint." *See* Affidavit of Ellen Kovner Silbergeld, Ph.D. (toxicologist) at 2. *See also* Affidavit of James W. Shockley (certified lead inspector) at 1; Affidavit of James E. Girard, Ph.D. (chemist) at 2. Dr. Silbergeld also stated that the primary mode of lead poisoning in children is from the mouthing or chewing of lead painted surfaces and *ingestion* [as opposed to "discharge, dispersal, release, or escape"] of paint chips or paint particles commingled in dust and soil. *See* Affidavit of Dr. Silbergeld at 4 (emphasis added). She further stated that it was not a "scientifically accurate assumption" to characterize lead as a pollutant. *See id.* at 2.

¶ 7 Lititz, on the other hand, has produced no evidence to support the contrary position. Based on the evidence in the record, I have substantial doubt about properly characterizing lead poisoning in children from the ingestion of lead-based paint in a residential setting as a scenario that unambiguously falls within the ambit

of a pollution exclusion in a commercial general liability policy. Since "[s]ummary judgment may be granted only in cases where the right is clear and free from doubt," *Cappelli v. York Operating Co., Inc.*, 711 A.2d 481, 483 (Pa.Super.1998) (*en banc*), it is improper to direct the trial court to enter summary judgment in favor of Lititz.

¶ 8 For the foregoing reasons, I would affirm the order of the trial court finding that Lititz has a duty to defend their insureds, the Steelys, and dismissing the Steelys' request for the court to enter an order requiring Lititz to indemnify the Steelys as premature.