**FAYETTE COUNTY HOUSING AUTHORITY**

v.

**HOUSING AND REDEVELOPMENT INSURANCE EXCHANGE and Katherine Umbel an Adult Individual in her own right and as Parent and Natural Guardian of her Minor son, Corey Brown.**

**Appeal of Housing and Redevelopment Insurance Exchange.**

Superior Court of Pennsylvania.

Argued Sept. 6, 2000.
Filed March 12, 2001.

J. Michael Adams, Pittsburgh, for appellant.

Melinda DellaRose, Uniontown, for Fayette County Housing Authority, appellee.

Mark T. Coulter, Pittsburgh, for Umbel, appellee.

Before McEWEN, President Judge, and CAVANAUGH, KELLY, POPOVICH, HUDOCK, FORD ELLIOTT, JOYCE, MUSMANNO, and LALLY–GREEN, JJ.

JOYCE, J.:

¶ 1 This appeal is from the order entered April 8, 1998, by the Court of Common Pleas of Fayette County, granting Fayette County Housing Authority's (FCHA) motion for summary judgment and denying Housing and Redevelopment Insurance Exchange's (HRIE) motion for summary judgment.[1] HRIE appeals the trial court's order.[2] For the following reasons, we reverse and remand for further proceedings consistent with this opinion. Before addressing the merits of Appellant's claim, we will briefly recount the pertinent facts of this case.

¶ 2 Katherine Umbel, on behalf of her minor son, filed a tort action against her landlord, FCHA. The suit sought recovery for injuries sustained after her son ingested lead-based paint from within her residence. At the time of injury, FCHA was insured by HRIE.

¶ 3 FCHA filed a declaratory judgment action seeking a determination as to whether HRIE had a duty to defend and indemnify FCHA in the lead-based paint action. Both parties filed motions for summary judgment. The trial court denied HRIE's motion and granted FCHA's motion. HRIE timely appealed.

¶ 4 While one panel of this Court was considering HRIE's appeal, another panel of our Court filed an opinion resolving the identical issues. *Lititz Mut. Ins. Co. v.*

---

1. Katherine Umbel joined in the motion filed by FCHA. Ms. Umbel filed a brief on appeal for the case currently before this Court.

2. For ease of analysis and discussion, we will refer to HRIE as Appellant and the Appellees' as FCHA and Umbel respectively.

*Steely,* 746 A.2d 607 (Pa.Super.1999).[3] In *Lititz,* our Court found that the pollution exclusion clause is unambiguous and that lead-based paint is a pollutant. Furthermore, we found that the poisoning of a tenant from lead-based paint was a result of the discharge, dispersal, release or escape of the lead-based paint. *Lititz, supra.* Following our decision in *Lititz,* the panel considering HRIE's appeal requested *en banc* certification of that case. This case now appears before this Court en banc.

¶ 5 As stated by our Supreme Court, when reviewing summary judgment cases:

[W]e must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Washington v. Baxter,* 553 Pa. 434, 441, 719 A.2d 733, 737 (1998) (citations and quotation marks omitted).

¶ 6 HRIE presents the following issues for our review: (1) whether lead-based paint is a pollutant within the meaning of the pollution exclusion clause; and (2) whether lead-based paint separating from a painted surface falls within the pollution exclusion clause meaning of discharge, dispersal, seepage, migration, release or escape of pollutants. Prior to *Lititz,* no appellate court of Pennsylvania had considered whether the pollution exclusion precludes coverage for injuries stemming from exposure to lead-based paint in a residential setting. Many other jurisdictions have addressed this and similar type issues resulting in differing resolutions which were supported by a wide divergence of reasoning. In resolving *Lititz,* we followed the sound reasoning set forth by the Pennsylvania Supreme Court in *Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (Pa.1999).

¶ 7 HRIE has asserted the pollution exclusion as an affirmative defense and thus bears the burden of proving such a defense. *Lititz Mut. Ins. Co. v. Steely,* 746 A.2d 607, 610 (Pa.Super.1999), *citing, Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 604–606, 735 A.2d 100, 106 (Pa.1999). To prevail, HRIE must prove that the language of the insurance contract is clear and unambiguous; otherwise, the provision will be construed in favor of the insured. *Id.*

¶ 8 The contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a given set of facts. *Madison,* 557 Pa. at 605, 735 A.2d at 106 (citation omitted). However, in interpreting the terms of the contract, we will not distort or strain the meaning of the language in order to find an ambiguity. *Id.* With these rules of interpretation in mind, we turn to the question of whether lead-based paint is clearly within the policy's definition of pollutant.

---

3. Our Court denied reargument *en banc* in *Lititz.* Our Supreme Court granted a petition for allowance of appeal on November 3, 2000.

¶ 9 The exclusion upon which Appellant relies provides that coverage does not apply to injury resulting from:

[T]he actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor soot, fumes, acid, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Policy at endorsement CG 21491093. The policy does not define a number of the words within the definition of pollutant. Words of common usage in an insurance policy are to be read in their natural, plain, and ordinary sense, and we may consider their dictionary definition in determining our understanding of these terms. *Madison*, 557 Pa. at 608, 735 A.2d at 108 (citation omitted).

¶ 10 Webster's Collegiate Dictionary, Tenth Edition (1993) defines "contaminant" as, in pertinent part, "something that contaminates" and "contaminate" as "to make impure by admixture." *Id.* at 249. The same source defines "irritant" as "causing irritation," especially "tending to produce physical irritation." *Id.* at 620. "Irritation" is "a condition of irritability, soreness, roughness, or inflammation of a bodily part." *Id.*

¶ 11 One of the examples of contaminants or irritants in the policy's definition of pollutant is "chemical," which is defined as "a substance obtained by or used in a chemical process." *Id.* at 196. "Chemistry" is "a science that deals with the composition, structure, and properties of substances and with the transformations they undergo." *Id.*

¶ 12 "Lead" is "a heavy soft malleable ductile plastic but inelastic bluish white metallic element found mostly in combination and used especially in pipes, cable sheaths, batteries, solder, and shields against radioactivity." *Id.* at 661. Thus, lead is a chemical element with specific properties, it may be used in a chemical process and clearly fits within the definition of a chemical. Lead-based paint, of which lead is a component, applied to the walls of a residential dwelling, over time exfoliates, abrades, flakes, chips, deteriorates or otherwise moves off of the wall as chips or fine dust of solid waste. *Lititz*, 746 A.2d at 611.

¶ 13 The most common cause of lead-based paint poisoning in children is from the ingestion of household dust containing lead from deteriorating or abraded lead-based paint. *Lititz*, 746 A.2d at 611, *citing, St. Leger v. American Fire and Casualty Insurance Company*, 870 F.Supp. 641 (E.D.Pa.1994); 42 U.S.C. § 4851(4). Furthermore, the Residential Lead Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4851 b(15), labels the exposure to lead from lead contaminated paint or dust, which results in adverse human health effects, a hazard. *Id.* The harmful effects that exposure to lead in lead-based paint creates are well studied and well known. *Id.* Because of these deleterious effects, the use of lead in residential paint was banned in 1978. Therefore, this Court has found that the definition of pollutant clearly and unambiguously applies to lead-based paint in a residential setting. *Id.*

¶ 14 Umbel, citing *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037 (7th Cir.1992), contends that under the exclusion, every substance in existence qualifies as a pollutant, thus making the clause ambiguous. Umbel's Brief at 14. Our Supreme Court has found that:

The pertinent inquiry is not, ..., whether the policy's definition of "pollutant" is so broad that virtually any substance, including many useful and necessary

products, could come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

*Lititz Mut. Ins. Co. v. Steely,* 746 A.2d 607, 610 (Pa.Super.1999), *citing, Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 606–607, 735 A.2d 100, 107 (Pa.1999). (citation omitted).

¶ 15 Both FCHA and Umbel make the argument that a majority of jurisdictions find the pollution exclusion inapplicable to residential lead-based paint cases.[4] They claim that because this appears to be what a majority of jurisdictions have found, that such a determination must be correct or that the clause must be ambiguous. As stated in *Lititz,* we believe our Supreme Court has provided the proper guidance for resolving this issue in *Madison. Lititz,* 746 A.2d at 610. Furthermore, this Court rejected such an argument finding that this would amount to "abdicating our judicial role were we to decide such cases by the purely mechanical process of searching the nations courts to ascertain if there are conflicting decisions." *Lititz,* 746 A.2d at 612 (citation omitted). Where the language of a contract is clear and unambiguous, the court is required to give effect to that language. *Lititz,* 746 A.2d at 612, *citing, Madison,* 557 Pa. at 604–606, 735 A.2d at 106.

¶ 16 Both FCHA and Umbel argue that the exclusion is ambiguous as to whether or not lead-based paint in a residence is a pollutant. Both parties assert that because the key terms of the clause, "dis-charge dispersal, release, escape, and pollution" can reasonably be interpreted as terms of environmental contamination, that the language is ambiguous as to a residential setting. Such analysis has clearly been rejected by our Supreme Court, which stated:

> If the pollution exclusion clause, by its express terms, does not require that a discharge or dispersal be "into the environment" or "into the atmosphere," then the court is not at liberty to insert such a requirement in order to effect what it considers to be the true or correct meaning of the clause. The court's only aim, as noted earlier, must be "to ascertain the intent of the parties as manifested by the language of the written instrument..."

*Lititz Mut. Ins. Co. v. Steely,* 746 A.2d 607, 612 (Pa.Super.1999), *citing, Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 609–610, 735 A.2d 100, 108 (Pa.1999). (citation omitted).

¶ 17 Umbel directs us to *United States Liability Ins. Co. v. Bourbeau,* 49 F.3d 786 (1st Cir.1995), as an example of a court using a fact specific analysis and applying "plain meaning reasoning" to determine that the exclusion clause is inapplicable in the present case. Umbel's Brief, at 17. We find such an argument unpersuasive.

¶ 18 *Bourbeau* dealt with lead-based paint being stripped from the exterior of a building. *Bourbeau,* 49 F.3d at 786–787. The paint chips and dust blew onto an adjoining property thereby contaminating that property. *Id.* at 787. Thus, as this kind of pollution fits within the plain and natural meaning of environmental pollu-

---

**4.** We note that at least two such cases cited by Umbel were reversed and no longer support her position, but rather support a finding that lead-based paint in a residential setting is a pollutant. In *Lititz Mutual Ins. Co. v. Steely,* 746 A.2d 607, 612 (Pa.Super.1999), this Court reversed the lower court and in *Peace v. Northwestern Nat. Ins. Co.,* 228 Wis.2d 106, 596 N.W.2d 429 (1999), the Supreme Court of Wisconsin reversed their Court of Appeals. Both of these cases were decided well before *en banc* argument in this case.

tant, the exclusion was held to be applicable. Umbel asks us to make a similar distinction. As previously discussed, our Supreme Court has already ruled that such an environmental distinction is improper. *Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607, 612 (Pa.Super.1999), *citing, Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 609–610, 735 A.2d 100, 108 (Pa.1999) (citation omitted).

¶ 19 Next, Umbel attempts to argue that because lead pigment was an intended component in leaded house paint, that leaded house paint does not fit the definition of pollution. Umbel's Brief at 22. For support, they rely upon this Court's opinion in *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 451 Pa.Super. 136, 145, 678 A.2d 802, 806 (1996) (*en banc*), *aff'd*, 557 Pa. 595, 735 A.2d 100 (1999); Umbel's Brief at 22. In *Madison*, this Court found that the fumes emitted by the floor-covering agent to be a pollutant, but not the agent itself. Umbel argues that if our Court was correct in *Madison*, then the lead-based paint is not pollution. Umbel's Brief, at 27. On this point, our Supreme Court found that we were not correct and expressly rejected this argument in *Madison*. Subsequently, this Court rejected such an argument in *Lititz*. Therefore, lead-based paint is a pollutant. *Lititz*, 746 A.2d at 611.

¶ 20 Having determined that the exclusion's definition of pollutant unambiguously applies to lead-based paint, we now address Umbel's argument that the policy's requirement that the injury arise out of the "discharge, dispersal, release or escape of pollutants" is ambiguous. In *Lititz*, the same argument was made. This Court found that:

> Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense and the language of the policy may be under-

stood by reviewing their dictionary definitions. In construing a similar clause, our Supreme Court has said: Webster's Ninth New Collegiate Dictionary (1990) defines "discharge" as, in pertinent part, "a flowing or issuing out." The same source defines "dispersal" as "the act or result of dispersing," especially "the process or result of the spreading of organisms from one place to another." ... A "release" is "the act or an instance of liberating or freeing (as from restraint)." Finally, an "escape" is an "act or instance of escaping: as ... flight from confinement ... [or] leakage or outflow[,] esp[.] of a fluid." The Supreme Court concluded the element of movement was the common thread to all these terms. It further determined that the language of the exclusion, by listing numerous similar terms such as "discharge" and "dispersal," preceded by the phrase "actual, alleged or threatened," considered all types and degrees of movement.

*Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607, 612 (Pa.Super.1999) (citation and quotation marks omitted). Accordingly, the pollution exclusion applies to the case at bar. Lead based paint applied to the walls of a residential dwelling either, exfoliated, abraded, flaked, deteriorated or otherwise moved off of the walls as small particles of lead paint dust. *Id.*

¶ 21 When the terms of the pollution exclusion are construed in their plain and ordinary sense, we find that the pollution exclusion clearly applies to the particular set of facts presently being considered. For the above reasons, the trial court erred in finding that the policy to be ambiguous. We accordingly reverse the order granting FCHA's motion for summary judgment and denying HRIE's similar motion. Consequently, we remand this mat-

ter and direct the trial court to enter an order in favor of HRIE.

¶ 22 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

¶ 23 McEWEN, President Judge, files Dissenting Statement in which FORD ELLIOTT, J., and MUSMANNO, J., join.

¶ 24 MUSMANNO, J., files Dissenting Statement in which FORD ELLIOTT, J., joins.

McEWEN, President Judge, dissenting:

¶ 1 While the author of the majority Opinion has in usual fashion undertaken a careful analysis of the issues presented in this appeal and proceeded to a perceptive expression of position, I am obliged to dissent and do so in reliance upon the dissenting opinion of our learned colleague Judge Justin M. Johnson in *Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607 (Pa.Super.1999). Appellee Umbel seeks a recovery, in the underlying civil action, from appellee Fayette County Housing Authority, based upon claims that the authority failed to comply with various federal statutes and regulations. Thus, the civil action underlying the instant declaratory judgment proceeding does not present a claim for bodily injury arising out of the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants", but arises, as the complaint recites, from the Authority's "derogation of its regulatory responsibilities". The *Lititz* dissent of Judge Johnson provides so clear a clarion call for rejection of the claim of exclusion that I more wisely serve to cite to his insightful discussion of the foregoing notions, as well as the well established principle that it is the nature of the claim, and not the details of the injury, which triggers the duty of an insurer to defend. Thus, I would affirm the decision of the distinguished Judge Gerald R. Solomon requiring appellant to provide a defense to appellee, Fayette County Housing Authority, in the underlying action.

¶ 2 FORD ELLIOTT, J., and MUSMANNO, J., join this Dissenting Statement.

MUSMANNO, J., dissenting:

¶ 1 I join in the dissenting statement of my distinguished colleague, President Judge McEwen. I write separately, however, to note my disagreement with the majority's conclusion that child's ingestion of lead-based paint constitutes "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." The majority, relying on *Madison Constr. Co. v. Harleysville Mut. Ins.*, 557 Pa. 595, 735 A.2d 100 (1999), concludes that the common element among the terms in the policy's pollution exclusion is movement of the pollutant. This case, however, does not present a situation in which the pollutant, due to its composition or lack of sufficient containment, moves and, consequently, causes injury. Instead, this case presents the situation in which a child physically places the lead-based paint chips into his body, ingesting them, thus causing injury to himself. Hence the actions of the child cause the movement of the pollutant, removing this situation from the pollution exclusion. Therefore, I would affirm the decision of the trial court, which required Housing and Redevelopment Insurance Exchange to provide a defense to the Fayette County Housing Authority in the underlying action.

¶ 2 FORD ELLIOTT, J., joins this Dissenting Statement.