The MUNICIPALITY OF MT. LEBANON, Appellant

v.

RELIANCE INSURANCE COMPANY and Henry and Shirley Kersten, Appellees.

Superior Court of Pennsylvania.

Argued Nov. 9, 2000.

Filed June 14, 2001.

Reargument Denied Aug. 22, 2001.

Thomas Smith, Pittsburgh, for appellant.

Steven J. Engelmyer, Philadelphia, for Reliance Ins. Co.

Before LALLY–GREEN, TODD and BROSKY, JJ.

TODD, J.:

¶ 1 In this insurance coverage declaratory judgment action, the Municipality of Mt. Lebanon, Pennsylvania ("Mt. Lebanon") appeals the trial court's grant of judgment on the pleadings in favor of Appellee Reliance Insurance Company ("Reliance").[1] Upon a thorough review of the record, we reverse.

¶ 2 This action arises out of underlying litigation commenced by Henry and Shirley Kersten ("the Kerstens") against Mt. Lebanon and Columbia Gas Company of Pennsylvania, Inc. ("Columbia Gas"). The Kerstens' complaint included counts sounding in negligence and gross negligence and claimed damages in excess of $300,000. In their complaint the Kerstens averred that Mt. Lebanon and/or Columbia Gas:

> created and/or failed to remedy dangerous conditions to the main feed gas line and associated gas lines located within the vicinity of the [Kerstens' home], including ... installing and/or maintaining a manhole directly over a gas line such that the gas line was left completely unsupported and suspended in air.

(Kersten Complaint, 4/1/99, attached as Exhibit B to Appellant's Complaint, at 2–3.) They further alleged the negligence of Mt. Lebanon and/or Columbia Gas in failing to inspect, maintain, and repair the gas line and in failing to comply with applicable standards and ordinances regarding the "inspection, maintenance, supervision, location and tests of gas lines, gas distribution systems and/or sewer lines and manholes." (*Id.* at 5.) According to the complaint, in 1998, "a tree, whose roots had secured themselves around a portion of the gas line, uprooted, and created stress on the line" causing "a rupture to that portion of the line left unsupported and severely corroded within the sewer manhole." (*Id.* at 3.) As a result, "the gas from the ruptured line entered the sewer system and traveled into the [Kerstens'] property, and a fire ensued." (*Id.*)

¶ 3 In addition to the allegations of negligence set forth above, the complaint in-

---

**1.** Nominal Appellees Henry and Shirley Kersten, the homeowners who filed the underlying litigation, did not participate in this appeal. The Insurance Environmental Litigation Association, however, filed an *amicus* brief in support of Reliance.

cluded claims that Mt. Lebanon and/or Columbia Gas were negligent in:

> (f) failing and omitting to do and perform those things necessary in order to avoid an unreasonable risk of harm to [the Kerstens'] property;

> (g) failing to take actions and precautions which would have prevented the damages to [the Kerstens'] property ...; and

> (h) otherwise failing to use due care under the circumstances.

(*Id.* at 5.)

¶ 4 In response to the Kerstens' action, Mt. Lebanon sought insurance coverage from Reliance pursuant to a commercial general liability policy (the "policy"). Reliance denied coverage and refused to defend the underlying litigation on the basis of the "Total Pollution Exclusion" which was included as an endorsement to the policy. Mt. Lebanon instituted this action, seeking a declaration that Reliance had a duty to defend and to indemnify it against the Kerstens' claims. Mt. Lebanon moved for partial judgment on the pleadings and Reliance cross-moved for judgment on the pleadings. The trial court granted Reliance's motion and this timely appeal followed.

¶ 5 Mt. Lebanon raises three averments of error: [2]

> 1. Whether the trial court erred in concluding that Reliance had no duty to defend Mt. Lebanon when the underlying complaint contains allegations which potentially fall within the scope of coverage provided by the policy?

> 2. Whether the trial court erred in granting a motion for judgment on the pleadings when there are disputed issues of material fact such that the moving party is not entitled to judgment as a matter of law?

> 3. Whether the trial court erred in holding that the "total pollution exclusion" is ambiguous with respect to whether natural gas is a pollutant and, therefore, erred in holding that coverage was excluded under this provision?

¶ 6 Our scope and standard of review in appeals of a grant or denial of a motion for judgment on the pleadings is well-settled. This Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. *Lewis v. Erie Insurance Exchange*, 753 A.2d 839, 842 (Pa.Super.2000). We review to determine whether "the trial court's action respecting the motion for judgment on the pleadings 'was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.'" *Id.* (citations omitted). We will affirm the grant of judgment on the pleadings only if "the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." *Id.* (citations omitted).

¶ 7 Interpretation of an insurance contract is a matter of law. *See Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Our standard of review, therefore, is plenary. *Young v. Equitable Life Assurance Society of the United States*, 350 Pa.Super. 247, 504 A.2d 339, 341 (1986). Where, as in this case, "an insurer relies on a pollution exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison*, 557 Pa. at 605, 735 A.2d at 106.

¶ 8 In interpreting the language of a policy, the goal is "to ascertain the intent

**2.** We have paraphrased Mt. Lebanon's averments of error.

of the parties as manifested by the language of the written instrument." *See Madison*, 557 Pa. at 606, 735 A.2d at 106. Indeed, our Supreme Court has instructed that the "polestar of our inquiry ... is the language of the insurance policy." *Id.*

¶ 9 When construing a policy, "[w]ords of common usage ... are to be construed in their natural, plain and ordinary sense ... and we may inform our understanding of these terms by considering their dictionary definitions" and where "the language of the [policy] is clear and unambiguous, a court is required to give effect to that language." *Id.* at 606–608, 735 A.2d at 106–108 (citations omitted). However, "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* Thus, while a court will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity", it must find that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

¶ 10 Under *Madison*, we must determine whether the specific substance at issue is a pollutant within the meaning of the particular insurance contract. *Id.*, 735 A.2d at 107. The Supreme Court directed that:

> The pertinent inquiry is not ... whether the policy's definition of "pollutant" is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

*Id.* Moreover, when the question is one of contract interpretation, public policy argu-

ments are irrelevant. *Id.* at 611, n. 8, 735 A.2d at 108 n. 8.

¶ 11 Finally, under *Madison*, we must determine whether the requisite causation has been demonstrated. *Id.* at 610–613, 735 A.2d at 109–110. Absent causation between the alleged pollutant and the injury, the claim would be outside of a pollution exclusion clause. *Id.*

¶ 12 Using this methodology in *Madison*, our Supreme Court affirmed the trial court's grant of summary judgment based, in part, on its determination that the substance at issue in that case, a concrete curing compound called "Euco Floor Coat", was a pollutant. *Id.* at 607–608, 735 A.2d at 107. In concluding that Euco Floor Coat was a pollutant, the Supreme Court relied, in part, upon the fact that the component parts of the product included substances that had been classified as toxic chemicals and/or hazardous air pollutants by the federal government. *Id.* at 607, 735 A.2d at 106–107. The Court considered as well information of record from the "Material Safety Data" report regarding the product prepared by Euco Floor Coat's manufacturer indicating one of its components was a suspected carcinogen, its vapors may be "irritating", and overexposure to its vapors "may cause CNS [central nervous system] effects, vertigo, muscular weakness, narcosis, confusion [and] coma." *Id.*

¶ 13 This Court employed this analysis in two recent decisions considering whether pollution exclusion provisions contained in insurance contracts precluded coverage for poisoning allegedly caused by lead-based paint. *See Fayette County Hous. Auth. v. Hous. and Redev. Ins. Exc.*, 771 A.2d 11 (Pa.Super.2001) (en banc); and *Lititz Mut. Ins. Co. v. Steely*, 746 A.2d 607 (Pa.Super.1999).

¶ 14 In *Lititz*, a mother sued the owners of her rental property on behalf of her

minor son, claiming that her son had suffered lead poisoning due to his inhalation/ingestion of lead-based paint. *Lititz,* 746 A.2d at 609. Following *Madison,* this Court found that lead-based paint was a pollutant under the terms of the pollution exclusion clause within the policy and concluded that causation had been demonstrated because the child's poisoning had been caused by the discharge, dispersal, release or escape of the lead-based paint. *Id.* at 611–12.

¶ 15 In *Fayette County Housing Authority,* this Court sitting *en banc* addressed the issue of whether lead-based paint was a pollutant within the meaning of a pollution exclusion clause. *Fayette County Hous. Auth.,* 771 A.2d at 12. This case similarly involved a claim for damages based on a minor's ingestion of lead-based paint while residing in rental housing. *Id.* Again following *Madison,* and citing to *Lititz,* this Court, first used authoritative references to define a number of words that the policy failed to define. *Id.* at 14. Focusing on the specific product and policy at issue in that case, this Court then determined that the definition of pollutant in the policy unambiguously applies to lead-based paint in a residential setting. *Id.* at 16. Finally, this Court concluded that the injury arose out of the "discharge, dispersal, release or escape of pollutants" and, therefore, the pollution exclusion applied. *Id.* Accordingly, we remanded with directions to enter summary judgment in favor of the insurer. *Id.*

¶ 16 To resolve the present case, we must apply the analysis mandated by *Madison* to the facts at hand. In this case, the substance in question is natural gas. The total pollution exclusion in the Reliance policy [3] states:

¶ 17 This insurance does not apply to:

(1) **bodily injury** or **property damage** which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

The policy further states:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals or waste material....

¶ 18 The policy does not define either irritant or contaminant. As our Supreme Court has noted, "[w]ords of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense, and we may inform our understanding of these terms by considering their dictionary definitions." *Madison,* 557 Pa. at 607, 735 A.2d at 108 (citations omitted). Webster's New Universal Unabridged Dictionary (1989) defines an "irritant" broadly as, *inter alia,* "a biological, chemical, or physical agent that stimulates a characteristic function or elicits a response, esp[ecially] an inflammatory response." Similarly, it defines a "contaminant" as "something that contaminates" while the verb to contaminate is defined as "to render impure or unsuitable by contact or mixture with something unclean, bad, etc."

¶ 19 In contrast to *Madison,* the record in the present case, consisting of the pleadings and documents properly attached thereto, reveals no such information. Indeed the only information before us con-

---

3. The policy is included in its entirety in the reproduced record. Contrary to Rule 2173 of Pennsylvania's Rules of Appellate Procedure, however, Appellant has failed to number the pages of the reproduced record separately. This, combined with the fact that the policy itself is voluminous and not consecutively paginated, makes accurate citation to the particular policy provisions impossible. This is precisely the concern underlying Rule 2173 and we remind counsel of its importance.

sists of Mt. Lebanon's arguments that the federal Comprehensive Environmental Response, Compensation and Liability Act[4] ("CERCLA") specifically excludes natural gas from the definitions of a "pollutant or contaminant" while its state equivalent, the Pennsylvania Hazardous Sites Cleanup Act,[5] similarly excludes natural gas from its definitions of a "contaminant" or "hazardous substance."

¶ 20 Instead, Reliance argues that natural gas is "dangerous" and that "its harmful effects are well-known." (Appellees' Brief, at 16.) The definition of pollutant, however, does not speak in terms of danger or harmful effects, but instead requires the court to determine whether in the context of this particular factual situation natural gas is an irritant or a contaminant.

¶ 21 Reliance's central argument is that the primary component of natural gas is methane gas, relying on *O'Brien Energy Systems, Inc. v. American Employers' Insurance Company*, 427 Pa.Super. 456, 629 A.2d 957 (1993), for the proposition that "the Superior Court has already ruled that methane is a pollutant." (Appellees' Brief, at 8.) In *O'Brien Energy Systems*, however, in affirming the grant of summary judgment, this Court's primary focus was whether the "sudden and accidental" exception to the pollution exclusion applied to gradual migration of methane gas from a landfill to a neighboring property. *Id.* at 960–962. Thus, although that opinion referred to the methane as "polluting gases", this Court determined the gradual migration of the gas to be outside the scope of the "sudden and accidental" exception, and did not specifically analyze whether methane was a pollutant under the facts of that case. *Id.* at 962.

¶ 22 To deem any substance that may have harmful effects under certain circumstances to be unambiguously a "pollutant" *per se* would be to create the "absurd" result that Justice Cappy warned of in his dissent in *Madison*. *Madison Constr. Co.*, 557 Pa. at 613, 735 A.2d at 110 (Cappy, J., dissenting). We do not believe such a result to have been the intention of our Supreme Court's majority in that case.

¶ 23 Mt. Lebanon also argues that preclusion of coverage in this situation by invocation of the total pollution exclusion is inappropriate because it is contrary to the reasonable expectations of the parties. Once again, the record before us discloses no such information.

¶ 24 Accordingly, we hold that Reliance has failed to carry its burden of proving that natural gas unambiguously is a pollutant as defined in the policy.[6] We cannot agree, therefore, based on the record before us that Reliance's right to succeed is certain and the case is so free from doubt that trial clearly would be a fruitless exercise. On that basis, we hold the trial court erred in granting judgment on the pleadings in favor of Reliance and, accordingly, we reverse.

¶ 25 Mt. Lebanon's argument that the trial court further erred in holding Reliance had no duty to defend provides an independent basis for our reversal of the trial court's grant of judgment on the pleadings. Mt. Lebanon argues that the underlying complaint sets forth allegations sounding in tort that potentially fall within the coverage of the policy. (Appellant's Brief, at 14.)

¶ 26 Again, both parties direct our attention to *Madison*, where our Supreme Court held, under the facts of that case, that the insurer had no duty to defend.

---

4. 42 U.S.C. § 9601(33).

5. 35 P.S. § 6020.103.

6. Having reached this conclusion, our inquiry ceases without reaching the issue of causation between the pollutant and the injury.

*Madison Const. Co.*, 557 Pa. at 611–12, 735 A.2d 109–10. In reaching this determination, however, the Court noted that "[a]n insurer's duty to defend is determined by the allegations in the underlying complaint. Therefore, if the claims of negligence were truly independent of [the insured's] use of a pollutant" the insurer would have a duty to defend. *Id.* at 611, 735 A.2d at 109 (citations omitted).

¶ 27 Mt. Lebanon argues that the trial court failed to consider adequately whether any of the Kerstens' claims are truly independent under *Madison*. We agree. The only information of record in the present action regarding the Kerstens' claims in the underlying litigation is found in the complaint, which contains numerous sweeping allegations of negligence. Even if we were to assume, which we do not, that natural gas unambiguously meets the definition of a pollutant under the policy, it remains to be seen at this stage of the litigation whether the Kerstens have made claims that truly are independent of Mt. Lebanon's use of natural gas. Until it can be conclusively determined that all of the Kerstens' claims against Mt. Lebanon fall outside of the scope of coverage of the policy, Reliance has a duty to defend Mt. Lebanon against all claims potentially within the scope of the policy. *See General Accident Ins. Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095

(1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover."); *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 953–54 (1992) ("If coverage ... depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend.")

¶ 28 In the present case, Reliance has failed to carry its burden of proving that natural gas unambiguously is a pollutant as defined by the policy. Accordingly, the trial court erred in entering judgment on the pleadings in favor of Reliance. Moreover, the trial court further erred in concluding based upon the record before it that Reliance had no possible duty to defend Mt. Lebanon. We hold, therefore, that the trial court erred as a matter of law in granting judgment on the pleadings in favor of Reliance. Accordingly, we reverse.

¶ 29 Judgment reversed. Jurisdiction relinquished.